## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CALIFORNIA PROTON TREATMENT CENTER, LLC,[1] | Case No. 17-_____ (___) |
| Debtor. | |

**MOTION OF THE DEBTOR FOR ENTRY OF AN INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507, FED. R. BANKR. P. 2002, 4001, 6004 AND 9014 AND DEL. L. R. BANKR. P. 4001-2 (I) AUTHORIZING DEBTOR AND DEBTOR IN POSSESSION TO OBTAIN FIRST PRIORITY AND PRIMING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

California Proton Treatment Center, as a debtor and debtor in possession in the above-captioned chapter 11 case (the "***Debtor***") hereby moves this Court (this "***Motion***") and respectfully states as follows:

### Relief Requested

1.    The Debtor moves on an expedited basis for entry of an interim order (the "***Interim Order***"), substantially in the same form attached hereto as <u>Exhibit A</u>, and ultimately, where applicable, a final order (the "***Final Order***" and, together with the Interim DIP Financing Order, the "***DIP Orders***") containing the following relief:[2]

(a)    under sections 105, 361, 362, and 364(c), (d) and (e) of the Bankruptcy Code, authorizing the Debtor to obtain first priority and priming postpetition financing in the form of a multiple-draw term loan facility as set forth in the term sheet attached as <u>Exhibit 1</u> to the Interim Order (the "***DIP Term Sheet***"), by and between the Debtor, ORIX Capital Markets, LLC, as administrative agent (in such capacity, the "***DIP Administrative Agent***") and the lender parties thereto (the "***DIP Lenders,***" and together

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business and its address for notice purposes is  9730 Summers Ridge Rd, San Diego, CA 92121, Attn: Wilson Williams, Manager.

[2]    Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Documents.

with the DIP Administrative Agent, the "***DIP Secured Parties***"), of up to $32 million (inclusive of the Rollup Amount (defined below) and the Upfront Fee Amount (defined below)) (the "***DIP Facility***"), of which $2,380,000 plus the Upfront Fee Amount shall be made available on an interim basis, under the terms of the Interim Order and DIP Loan Documents (as defined below);

(b)    subject to entry of the Final Order, authorizing the partial roll-up of the Prepetition Facility (defined below), in an amount equal to $16 million, into the DIP Facility;

(c)    granting security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Administrative Agent, for the benefit of DIP Secured Parties, on the DIP Collateral (as defined below) to secure all obligations of the Debtor under and with respect to the DIP Facility;

(d)    allowing superpriority administrative expense status (including pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code) of the DIP Obligations in the Debtor's chapter 11 case (the "***Chapter 11 Case***");

(e)    authorizing the Debtor to execute and deliver additional documentation consistent with the terms of (or as may be required by) the DIP Term Sheet (such documents, together with the DIP Term Sheet, the "***DIP Loan Documents***"), and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(f)    authorizing the use of Cash Collateral (as defined below) by the Debtor effective as of the Petition Date;

(g)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order;

(h)    granting adequate protection to ORIX Capital Markets, LLC, as the prepetition agent (in such capacity, the "***Prepetition Agent***"), for its benefit and for the benefit of the lenders under the Prepetition Loan Facility (as defined below) (the "***Prepetition Lenders***" and, together with the Prepetition Agent, the "***Prepetition Secured Parties***");

(i)    granting certain adequate protection to Varian Medical Systems, Inc. ("***Varian***"), in its capacity as the seller and financer of the Proton Equipment Collateral (defined below);

(j)    pursuant to Bankruptcy Rule 4001, scheduling an interim hearing on this Motion and authorizing, from the entry of the Interim Order until the final hearing on the Motion (the "***Final Hearing***"), among other things, the Debtor to obtain credit and use Cash Collateral subject to the terms and

conditions set forth in the DIP Loan Documents; and

(k)     pursuant to Bankruptcy Rule 4001, scheduling a Final Hearing and establishing notice procedures in respect of the Final Hearing by this Court to consider entry of the Final Order authorizing the relief requested in this Motion on a permanent basis, in accordance with the DIP Loan Documents.

## Jurisdiction and Venue

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), to the entry of a final order by this Court in connection with this Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1408.

5.     The bases for the relief requested in this Motion are sections 105(a), 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Local Rules 4001-2 and 9003-1.

## General Background

6.     The Debtor operates an approximately 100,000 square-foot, purpose-built proton therapy facility in San Diego, California (the "*Proton Center*").

7.     A detailed description of the Debtor's business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, is set forth in greater detail in the *Declaration of J. Jette Campbell, in Support of Chapter 11 Petitions and First-Day Motions* (the

"***First-Day Declaration***"), filed contemporaneously therewith and incorporated herein by reference.

8.      On the date hereof (the "***Petition Date***"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

9.      No request for the appointment of a trustee or an examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

**Motion Background**

**I.      The Debtor's Prepetition Secured Indebtedness**

10.      The Debtor is party to that certain Loan and Security Agreement, dated as of September 30, 2011, by and among the Debtor, as borrower, the Prepetition Agent, and the Prepetition Lenders from time to time party thereto (in each case as amended, supplemented or otherwise modified prior to the date hereof, including pursuant to the Secondment Agreement (defined below), and including all exhibits and other ancillary documentation in respect thereof, the "***Prepetition Facility***"; and together with any other agreements, instruments, notes, guaranties and other documents related thereto, collectively, the "***Prepetition Loan Documents***").  Under the Prepetition Facility, the Prepetition Secured Parties loaned the Debtor $185 million across three separate tranches, the indebtedness of which are now reflected in three separate sets of promissory notes (each as defined in the Prepetition Loan Documents, the "***Tranche A Notes***", "***Tranche B Notes***", and "***Tranche C Notes***").  All obligations of the Debtor arising under the Prepetition Facility and the Prepetition Loan Documents, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations in the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the

Prepetition Secured Parties by the Debtor, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall be referred to herein collectively as the "*Prepetition Obligations*."

11.     Pursuant to the Prepetition Loan Documents, prior to the Petition Date, the Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties to secure the Prepetition Obligations, and subject to paragraph 35 of the Interim Order, a valid and perfected first priority security interest in and continuing lien (all such security interests and liens, collectively, the "*Prepetition Liens*") on substantially all of the Debtor's assets, including (a) the Collateral (as defined in the Prepetition Facility), (b) all real property and all improvements thereon, (c) all funds of the Debtor on deposit from time to time with the Prepetition Agent or any agent of the Prepetition Agent or on deposit in any depository account controlled by Prepetition Agent, including without limitation, all Deposits (as defined in the Prepetition Facility), and (d) all Personal Property, including, without limitation, all of the Debtor's personal property, fixtures, attachments and equipment located upon, attached to, used or required to be used in connection with the operation of the Property, Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Electronic Chattel Paper, Equipment, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter of Credit Rights, and Supporting Obligations (each as defined in the Prepetition Facility), and all replacements, substitutions, and additions to such property and all proceeds thereof (collectively, the "*Prepetition Collateral*").

12.     Pursuant to the Prepetition Loan Documents, the Debtor was, as of the Petition Date, indebted to the Prepetition Secured Parties in an amount: (i) not less than $180,739,882.28, which consists of aggregate principal amount of the Prepetition Obligations (including not less than (x) $161,384,352.73 in outstanding principal of Tranche A Notes, (y) $9,749,646.04 in outstanding principal of Tranche B Notes (as defined in the Prepetition Facility), and (z)

$9,605,883.51 in outstanding principal of Tranche C Notes (as defined in the Prepetition Facility)), (ii) certain protective advances made by the Prepetition Secured Parties, (iii) accrued and unpaid interest (including at the default rate), and certain costs, fees and charges (including any attorneys', accountants', appraiser's and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents), and (iv) additional amounts to be determined now or hereafter due under the Prepetition Loan Documents.

13.     On November 6, 2015, the Debtor and the Prepetition Secured Parties executed the Forbearance Agreement and Consent to Secondment dated as of November 6, 2015 (the "*Secondment Agreement*"), which, *inter alia*, forestalled the Prepetition Secured Parties' right to foreclose on the Prepetition Collateral, under certain circumstances, until April 1, 2017.

## II.     The Debtor's Immediate Need for Financing

14.     As discussed in detail in the First-Day Declaration, the Debtor has an immediate need for postpetition financing in order to administer this Chapter 11 Case, provide cancer treatment to the Proton Center's patients, preserve and maximize the value of the Debtor's assets for the value of creditors, and potentially consummate a sale of substantially all of its assets.

15.     Due to the fact that virtually all of the Debtor's cash constitutes cash collateral, and substantially all of its non-cash assets are subject to the Prepetition Liens and security interests of the Prepetition Secured Parties and Varian, the Debtor is currently without sufficient unencumbered funds with which to pay ongoing operating expenses necessary to administer the Chapter 11 Case. The Debtor's immediate access to the proposed DIP Facility is necessary in order to administer the Chapter 11 Case, provide cancer treatment to the Proton Center's patients, preserve and maximize the value of the Debtor's assets and estate for the value of creditors, potentially consummate a sale of substantially all of its assets, and avoid immediate and irreparable harm to the Debtor's estate and creditors.

16.     As a result of extensive arm's-length negotiations conducted by the Debtor and the DIP Secured Parties, the DIP Secured Parties have agreed and consented to provide the Debtor with the DIP Facility and to permit the Debtor to use their cash collateral during the interim postpetition period pursuant to the terms of the DIP Loan Documents and the Interim Order, pending a Final Hearing.  These financial accommodations, as described below, should enable the Debtor to commence, and continue to administer in an orderly fashion, the Chapter 11 Case, while exploring the potential sale of substantially all of the Debtor's assets.

## III.    The Debtor's Decision to Enter into the DIP Facility

17.     Leading up to the Chapter 11 Case, the Debtor explored strategic alternatives and engaged in extensive negotiations with its secured lenders and principal creditors in an effort to obtain additional liquidity.  Given the immediacy of the Debtor's financing needs, and the existing Prepetition Liens, the Debtor and its professionals determined that additional unsecured financing was not available.  Indeed, no party (other than the DIP Secured Parties) was in a position to provide debtor in possession financing that satisfied the Debtor's needs and on terms and conditions more favorable to the Debtor than those provided by the DIP Secured Parties. Thus, the Debtor was unable to obtain alternative postpetition financing proposals from other lenders through credit allowable as an administrative expense or secured by liens on the Debtor's assets junior to the Prepetition Liens or on better terms than those provided by the DIP Secured Parties.

18.     Faced with these circumstances, and given the inability to find other postpetition financing on terms and conditions more favorable to the Debtor than those provided by the DIP Secured Parties, the Debtor engaged in good faith, arm's-length negotiations with the DIP Secured Parties over the course of several weeks, which culminated in the DIP Facility, the Term Sheet, the Budget, and the form of the proposed Interim Order.  During these negotiations, the

Debtor, with the assistance of its advisors, went to great lengths under difficult circumstance to achieve the best deal possible for itself and its constituencies.

19.     In this challenging credit market, the Debtor has been unable to find alternate or better financing on the terms and of the type and magnitude required in the Chapter 11 Case on an unsecured basis, or without offering terms substantially similar or better to those provided under the DIP Loan Documents.  The Debtor ultimately decided that the proposal for debtor in possession financing advanced by the DIP Secured Parties was the most favorable under the circumstances, because it: (a) could be documented and accessed quickly; (b) adequately addresses the Debtor's reasonably foreseeable liquidity needs; and (c) maintains the going concern value of the Debtor's business and the quality of care for the Proton Center's patients. For the foregoing reasons, the Debtor respectfully submits that entry into the DIP Loan Documents is in the best interests of its estate, creditors, and other parties in interest.

## IV.     Material Terms of the DIP Facility and Provisions that Potentially Implicate Local Rule 4001-2

### A.      Material Terms of the DIP Facility[3]

| DIP Borrower: | The Debtor |
|---|---|
| Lenders: | ORIX Capital Markets LLC<br>Varian Medical Systems International, AG<br>JPMorgan Chase Bank, N.A. |
| Type and Amount of DIP Facility:<br><br>*Term Sheet,* p. 2;<br><br>*Interim Order,* ¶¶ 3, 8, 33, Annex I. | The DIP Facility shall be comprised of superpriority priming delayed multiple-draw term loans (the "DIP Loans" and the commitment of the DIP Lenders to make the DIP Loans, the "Commitment"), consisting of (i) a new money loan in an aggregate amount of up to $16,000,000 ("New Money Loans"), (ii) the Roll-Up in an amount equal to $16,000,000 and (iii) the Upfront Fee.  Amounts paid or prepaid under the DIP Loans may not be reborrowed.  ¶¶ 3, 8, Annex I.<br><br>The DIP Loan Documents allow (i)  the DIP  Administrative Agent to |

---

[3]   The following description of the terms of the DIP Facility is intended solely to provide the Court and interested parties with a brief overview of the significant terms thereof.  For a complete description of the terms and conditions of the DIP Facility, reference should be made to the DIP Loan Documents and the Interim Order. This summary is qualified in its entirety by the provisions of the DIP Loan Documents and the Interim Order. In the event that there is any conflict between the Motion and either the DIP Loan Documents or the Interim Order, the DIP Loan Documents or the Interim Order, as applicable, will control in all respects.

| | |
|---|---|
| | credit bid the full amount of the DIP Obligations, and (ii) subject to the indefeasible payment in full in cash of the DIP Obligations, the Prepetition Agent to use the Prepetition Obligations and the Adequate Protection Liens and Adequate Protection Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral. ¶ 33 |
| Use of DIP Facility Proceeds & Cash Collateral:<br><br>*Interim Order*, ¶ 3 | The proceeds of the DIP Facility and Cash Collateral shall be used in accordance with the DIP Budget, including, without limitation: (i) upon the entry of a Final Order, to repay the Prepetition Facility in the amount of $16 million, which amount will be applied (x) *first*, to the Tranche C Notes and (y) *second,* to a pro rata portion of the aggregate outstanding principal of Tranche A Notes in accordance with the DIP Term Sheet; (ii) to pay all fees due to the DIP Secured Parties and all professional fees and expense incurred by the DIP Secured Parties; (iii) to make all adequate protection payments to the Prepetition Secured Parties; and (iv) to provide working capital, and for other general corporate purposes of the Debtor, and to pay administration costs of the Chapter 11 Case and claims or amounts approved by the Bankruptcy Court. |
| Interim Availability**:**<br><br>*Interim Order,* ¶ 2<br><br>*Term Sheet,* p. 3 | The maximum amount to be drawn under the DIP Facility prior to the entry of the Final Order is $2,380,000 plus the Upfront Fee Amount, subject to compliance with the terms, conditions, and covenants in the Term Sheet and in accordance with the Budget. All DIP Loans made on an interim basis shall be due and payable on the date that is 30 days after the entry of the Interim Order (unless such date is extended by the Required DIP Lenders) or such earlier date upon the occurrence of a maturity event, unless a Final Order approving the DIP Facility in form and substance satisfactory to the Required DIP Lenders shall have been entered by the Bankruptcy Court on or before such date. |
| Maturity:<br><br>*Interim Order,* ¶ 22 | The earliest to occur of:  (i) three (3) months following the first day that funds are available following entry of the Interim Order, provided that this initial maturity date shall automatically extend for an additional three month period, and extend again for to October 31, 2017, provided that (a) no Default or Event of Default has occurred and is continuing, unless the DIP Administrative Agent at the direction of the Required DIP Lenders delivers a notice two weeks prior to the maturity date that such extension will not be granted; (ii) the earlier of the effective date and the date of substantial consummation of any confirmed chapter 11 plan; (iii) the date that the Court orders dismissal of case or the conversion to chapter 7; (iv) the date of consummation of a sale of all or substantially all of the Debtor's assets or stock pursuant 11 U.S.C. § 363; (v) the acceleration of the DIP Loans and the termination of the Commitment by the DIP Lenders pursuant to the terms of the DIP Loan Documents, including as a result of the occurrence of an Event of Default; and (vi) the thirtieth (30th) day after the entry of this Interim Order (unless such date is extended by the Required DIP Lenders), if, as of such date, the Bankruptcy Court has not entered the Final Order. |
| Carve-Out:<br><br>*Interim Order,* ¶ 19 | Upon the DIP Administrative Agent's issuance of a Carve-Out Notice (as defined in the Interim Order), all liens, claims and other security interests held by any party, including the DIP Liens, the DIP |

|  | Superpriority Claims, the Adequate Protection Liens, and the Prepetition Liens shall be subject to: (i) all court and Trustee fees; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; (iii) allowed professional fees and expenses of the Debtor and any statutory committee, in the amount set forth in the DIP Budget, incurred prior to the Carve-Out Effective Date; (iv) allowed professional fees and expense of the Debtor or any statutory committee, not to exceed $250,000, incurred after the Carve-Out Effective Date. |
|---|---|
| Interest Rates:<br><br>*Term Sheet*, p. 8, Annex III | Non-Default: LIBOR + 9%<br><br>Default: LIBOR + 11% |
| DIP Fees:<br><br>Term Sheet, Annex III | Upfront Fee: $560,000, payable to each DIP Lender according to its pro rata share of the New Money Loans which fee shall be fully earned on the Closing Date and ratably added to the then outstanding DIP Loans on such date and shall constitute principal thereof for all purposes hereof.<br><br>Agency Fee: $80,000 per annum, payable to the DIP Administrative Agent, which amount shall accrue monthly, calculated on the basis of a 360-day year of twelve 30-day months and such amount shall be junior to the Varian Services and senior to payments of principal and interest on the Loans to the Lenders. |
| DIP Lender Prof. Fees:<br><br>*Interim Order*, ¶ 3; | The Debtor agrees to pay the Lenders' professional fees, including those incurred in connection with the preparation, negotiation, documentation and Court approval of the DIP Facility. |
| Post-Petition Admin. Claims:<br><br>*Interim Order*, ¶ 14 | The DIP Secured Parties are granted the DIP Superpriority Claims for all of the DIP Obligations, which shall constitute allowed superpriority administrative expense claims with priority over any and all administrative expenses against the Debtor, of the kind specified in, or ordered pursuant to section 506(c) (subject to entry of the Final Order), or any other provisions of the Bankruptcy Code, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the payment of the Carve-Out.  The DIP Superpriority Claims shall be subject and subordinate in priority of payment only to, after the Carve-Out Effective Date (as defined below), the Carve-Out, and, subject to the DIP Term Sheet, the Accrual Amount (as defined in the DIP Term Sheet). |
| DIP Collateral:<br><br>*Interim Order*, ¶ 8. | The "DIP Collateral" means (i) all of the property and assets of the Debtor or the estate (including, without limitation, the Prepetition Collateral) whether arising prepetition or postpetition of any nature whatsoever and all proceeds, products, offspring, profits or rents thereof and (ii) subject to the entry of the Final Order, the Avoidance Action Proceeds. |

| | |
|---|---|
| Post-Petition Liens:<br><br>*Interim Order*, ¶ 8. | The DIP Lenders shall receive, subject to the Carve-Out, the following liens and security interests on the DIP Collateral:<br><br>(i) pursuant to Bankruptcy Code section 364(d)(1) a first-priority, valid and perfected, priming lien and security interest in on all encumbered property of the Debtor and its estate, which lien and security interest shall be senior to any existing liens, claims, interests or encumbrances; provided that such priming lien shall be subject to (A) the matters expressly identified on Annex II to the DIP Term Sheet, (B) a valid, non-avoidable lien that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, or (C) a valid, non-avoidable lien that was senior to the Prepetition Liens on the Petition Date (but excluding any liens or security interests granted to or for the benefit of Scripps) (the foregoing clauses (A)-(C) being referred to collectively as the "<u>Permitted Exceptions</u>"); provided, further, that all liens and security interests granted and/or described in the DIP Orders shall prime and be senior to (1) any alleged leasehold or other right, claim, title or interest in any property of the Debtor pursuant to the Ground Lease (as defined in the Prepetition Facility) or the Ground Sublease (as defined in the Prepetition Facility) or of Scripps Medical Group, Inc. (or any affiliate thereof (individually and collectively, "<u>Scripps</u>"), including, without limitation, any right, title, claim or other interest pursuant to that certain Lease and Management Services Agreement, dated as of June 11, 2010 between the Debtor and Scripps or otherwise, and (2) any other right, claim, title or other interest of Scripps relating to, arising out of or in connection with any obligation or agreement of the Debtor or any other person or party (including but not limited to in deposit accounts or any of the DIP Collateral), including without limitation, the Multi-Party Agreement, dated as of September 30, 2011, between and among the Debtor, Scripps, the Prepetition Agent and ORIX Proton San Diego, LLC.<br><br>(ii) pursuant to section 364(c)(2), a first-priority valid and perfected lien on and security interest in all unencumbered property of the Debtor or its estate, including without limitation, following entry of the Final Order, on proceeds of actions pursuant to sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code; and<br><br>(iii) pursuant to section 364(c)(3), a valid and perfected junior lien on and security interest in all property of the Debtor's estate wherever located (now or hereafter acquired and all proceeds, products and offspring thereof) that is subject to a Permitted Exception, which DIP Lien is junior only to any such Permitted Exception and senior to any and all other liens, interests and encumbrances. |
| Financial Covenants:<br><br>*Term Sheet*, p. 13 | The proceeds of the DIP Loans and all proceeds of Collateral shall be used by the Debtor solely for the purposes of and up to the amounts set forth in the Budget, subject to the Revenue Permitted Deviation and the Disbursements Permitted Deviation.<br><br>If at any time there is a Deficiency, the Borrower shall promptly, but in no event later than 3 days after it reasonably believes a Deficiency exists, notify the DIP Administrative Agent.<br><br>"<u>Deficiency</u>" means, with respect to the Budget, if at any time the projected disbursements of the Borrower for the DIP Period exceeds (i) |

| | |
|---|---|
| | the projected Revenues to be collected for the DIP Period and (ii) the remaining availability of the Commitments. |
| <u>363 Sales Milestone Covenant</u>:<br><br>*Interim Order,* ¶ 23(iii)<br><br>Term Sheet, p. 13 | The failure of the Debtor to timely satisfy any of these milestones shall constitute an event of default: (a) as promptly as possible but in no event later than 30 calendar days after the Petition Date (the "Sale Motion Filing Date"), the Debtor shall file a motion seeking (i) the entry of an order approving the sale of all or substantially all of the Company's assets (the "363 Sale") pursuant to section 363 of the Bankruptcy Code and (ii) approval of the Bidding Procedures Order (as defined below); (b) within 21 calendar days after the Sale Motion Filing Date, the Bankruptcy Court shall enter an order (i) approving bidding procedures for the 363 Sale and (ii) scheduling the date for an auction, if necessary, and the hearing to consider approval of the 363 Sale; (c) the Bidding Procedures Order shall provide that bids shall be due within 60 calendar days after entry of the Bid Procedures Order (the "Bid Deadline"); (d) within three (3) business days after the Bid Deadline, the Debtor shall have commenced the auction, if necessary, pursuant to the Bid Procedures Order; (e) within ten (10) business days after the Bid Deadline, the Bankruptcy Court shall have entered an order approving the 363 Sale; and (f) upon the later of 25 calendar days after the Bid Deadline or five (5) calendar days after all necessary regulatory approvals are completed, the Debtor shall have consummated the 363 Sale to the winning bidder or bidders. |
| <u>Adequate Protection for Prepetition Secured Parties</u>:<br><br>*Interim Order,* ¶ 15. | The Prepetition Agent  shall be granted the following protection for and equal in amount to the diminution in the value of the Prepetition Agent's and Prepetition Lenders' interest in the Prepetition Collateral, arising from or relating to the priming of the Prepetition Liens, the sale, lease or use by the Debtor of the Prepetition Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise (together, the "Adequate Protection Obligations"):<br><br>(i) <u>Adequate Protection Liens</u>.  Effective and perfected as of the date of entry of the Interim Order, a replacement security interest in and lien on all assets and property of the Debtor whether arising prepetition or postpetition of any nature whatsoever, including, without limitation, following entry of the Final Order, Avoidance Action Proceeds, which liens and security interests are junior and subordinate to (x) the Carve-Out, and (y) the DIP Obligations, the DIP Liens and the DIP Superpriority Claims.  The Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise except as expressly provided in the Interim Order and the DIP Loan Documents.<br><br>(ii) <u>507(b) Claim</u>.  To the extent the Prepetition Agent shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of adequate protection hereunder, the Prepetition Agent shall receive an administrative expense claim pursuant to Bankruptcy Code section 507(b) (a "Adequate Protection Section 507(b) Claim") with priority over all other administrative |

| | |
|---|---|
| | expenses, but in all cases subject and subordinate to the Carve-Out, the DIP Obligations, the DIP Liens and the DIP Superpriority Claims. |
| | (iii) <u>Adequate Protection Payments</u>.  The Debtor's prompt payment of, whether incurred prior to or following the Petition Date, all fees and expenses of the Prepetition Agent and the Prepetition Lenders as provided for in the Prepetition Loan Documents, including the reasonable fees and expenses of counsel and advisors for which such party is entitled to be reimbursed under the Prepetition Loan Documents. |
| | (iv) <u>Financial Reporting</u>.  The Debtor shall continue to provide the Prepetition Agent and Prepetition Lenders with financial and other reporting in compliance with the Prepetition Documents and any reporting described in the Interim Order. |
| <u>Adequate Protection for Varian</u>:<br><br>*Interim Order*, ¶ 41 | Varian shall be granted the following protection, pursuant to sections 361, 507 and 363(e) of the Bankruptcy Code, for and equal in amount to the diminution in the value of Varian's interest in the Proton Equipment Collateral, arising from or relating to the priming of the Varian Prepetition Liens, the sale, lease or use by the Debtor of the Proton Equipment Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise (together, the "<u>Varian Adequate Protection Obligations</u>") |
| | (i) <u>Varian Adequate Protection Liens</u>.  Effective and perfected as of the date of entry of this Interim Order, a replacement security interest in and lien on the Proton Equipment Collateral (the "<u>Varian Adequate Protection Liens</u>"), which liens and security interests are junior and subordinate to the Carve-Out, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Section 507(b) Claim and the Adequate Protection Payments. The Varian Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Loan Documents. |
| | (ii) <u>Varian 507(b) Claim</u>.  To the extent Varian shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of adequate protection hereunder, Varian is hereby granted an administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "<u>Varian Section 507(b) Claim</u>") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Section 507(b) Claim and the Adequate Protection Payments. |
| | (iii) <u>Payments to Varian</u>.  Any amounts paid to Varian prior to the Petition Date under the Secondment Agreement  shall not be subject to avoidance pursuant to chapter 5 of the Bankruptcy Code or otherwise |

| | |
|---|---|
| | and (ii) to the extent any amounts under the Secondment Agreement remain due and owing to Varian as of the Petition Date, such amounts shall be paid by the Debtor promptly from the proceeds of the DIP Facility in accordance with the DIP Budget. |
| Financial Reports:<br><br>*Interim Order*, ¶¶ 7, 15(iv); | The Debtor (a) shall deliver a monthly report/reconciliation to the DIP Secured Parties on the seventh (7th) day of the immediately preceding month, the actual and budgeted results for such month by line item in the Budget and the cash receipts, together with a reasonably detailed written explanation of all Permitted Deviations, which report shall be in form and substance satisfactory to the DIP Lenders and the Debtor ("Reconciliation Report"); (b) shall notify the DIP Administrative Agent as soon as reasonably practicable if the Debtor anticipates that it will exceed the Permitted Deviation for any Budget Test Period; (c) shall obtain from Scripps (defined below) (or any entity acting as the successor to Scripps) and provide to the DIP Administrative Agent and the DIP Lenders, a detailed monthly accounting of the revenues and receipts generated or otherwise received by, and the costs and expenses incurred by, Scripps in connection with the clinical and medical operations at the Facility (as defined in the Prepetition Facility); and (c) shall provide any other reporting as reasonably required by the DIP Administrative Agent and/or Required DIP Lenders, which the DIP Administrative Agent shall make available to the DIP Lenders. ¶ 7<br><br>The Debtor shall continue to provide the Prepetition Agent and Prepetition Lenders with financial and other reporting in compliance with the Prepetition Documents and any reporting described in the Term Sheet. ¶ 15(iv) |
| Events of Default:<br><br>*Interim Order*, ¶ 23<br><br>Term Sheet, pp. 16-19 | The Events of Default are set forth in paragraph 23 of the Interim DIP Order and include:<br><br>(i) the Debtor's failure to pay (a) any principal of the DIP Loans when the same shall become due and payable, whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment; or (b) within three (3) business days, any interest on the DIP Loans, the fees or other sums due thereunder, when the same shall become due and payable, whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment;<br><br>(ii) the Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or its obligations under the DIP Loan Documents or the Interim Order and such failure remains uncured for three (3) business days;<br><br>(iii) the Debtor's failure to satisfy any of the 363 Sale Milestones as set forth in the DIP Term Sheet;<br><br>(iv) the dismissal of the Chapter 11 Case or the conversion to a case under chapter 7 of the Bankruptcy Code;<br><br>(v) the appointment in the Chapter 11 Case of a chapter 11 trustee, receiver, or examiner with enlarged powers shall be appointed in the Chapter 11 Case;<br><br>(vi) except as expressly set forth in the Interim Order, the Final Order, the DIP Term Sheet or the other DIP Loan Documents, the Debtor (a) |

incurs or requests authority to incur any additional postpetition indebtedness (other than ordinary course trade debt, subject to the limitations set forth in the Prepetition Loan Documents) or (b) grants or requests authority to grant any lien or security interest to secure such postpetition indebtedness;

(vii) if the Interim Order or the Final Order, as the case may be, is amended, supplemented, stayed, reversed, vacated or otherwise modified (or the Debtor shall apply for authority to do so) without the written consent of the Required DIP Lenders or this Interim Order or the Final Order shall cease to be in full force and effect;

(viii) the failure of the Final Order to have been entered within thirty (30) days following entry of the Interim Order (unless such date is extended by the Required DIP Lenders);

(ix) if a Debtor Party (as defined in the DIP Term Sheet) files a motion seeking, or the Bankruptcy Court shall enter, an order (a) approving payment of any pre-petition claim other than as provided for in an order entered pursuant to a first-day motion (a "First Day Order") and included in the Budget or otherwise consented to by the Required DIP Lenders in writing, (b) granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to any holder of any security interest to permit foreclosure on any assets having a book value in excess of $100,000 in the aggregate or to permit other actions that would have a material adverse effect on the Debtor or its estate, or (c) approving any settlement or other stipulation not approved by the Required DIP Lenders and not included in the Budget with any secured creditor of the Debtor providing for payments as adequate protection or otherwise to such secured creditor;

(x) any material contract is rejected or otherwise terminated or any material property of the Debtor is sold, in each instance, without the prior written consent of the Required DIP Lenders; or

(xi) any other Event of Default as set forth in the DIP Term Sheet or the DIP Loan Documents.

| | |
|---|---|
| Rights and Remedies Upon Default: <br><br> *Interim Order*, ¶ 24 <br><br> *Term Sheet*, pp. 18-19 | Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Administrative Agent may, in its sole discretion, and at the direction of the DIP Lenders holding at least a majority of the outstanding Commitments shall (without further notice or grace period, unless required by applicable law), in its sole discretion, take any or all of the following actions: <br><br> (i)(1) declare all obligations under this DIP Facility to be immediately due and payable, (2) declare the termination, reduction or restriction of any further Commitment, to the extent any such Commitment remains, and (3) terminate the DIP Facility as to any future liability or obligation of the DIP Administrative Agent and the DIP Lenders, but without affecting any of the obligations under the DIP Facility, the liens under the DIP Facility, or postpetition administrative superpriority claim status; <br><br> (ii) declare a termination, reduction or restriction on the ability of the Debtor to use any cash collateral derived solely from the proceeds of Collateral (any such declaration shall be made to the Company, the |

| | official committee of creditors of the Company (if applicable) and the United States Trustee (if applicable), |
| | (iii) exercise the rights of a secured party upon default under the UCC and/or (iv) exercise any and all rights and remedies available under any of the Prepetition Loan Documents, including judicial or non-judicial foreclosure or public or private sale of any of the Collateral. |
| | Following seven (7) business days' notice of such Event of Default to the Debtor, the Prepetition, the official committee of unsecured creditors (if one is appointed), and the U.S. Trustee, unless such Event of Default is cured within such time or an order of the Bankruptcy Court is entered to the contrary, the DIP Administrative Agent and the DIP Lenders shall have relief from the automatic stay to exercise remedies under the DIP Loan Documents. |
| | Notwithstanding the foregoing, irrespective of the occurrence and continuation of an Event of Default and the provisions set forth above, the DIP Lenders and the DIP Administrative Agent shall not sweep any funds of the Debtor, the sweeping of which would reasonably be expected to adversely affect patient care; provided that this limitation shall not apply if Scripps fails to perform in any respect under the Facility Lease or the Debtor is no longer treating or scheduled to treat patients. |

**B.     Highlighted Provisions Under Bankruptcy Rule 4001 and Local Rule 4001-2.**

    **a.     Bankruptcy Rule 4001**

20.     The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv), to the extent applicable, are set out at the following sections of the Interim Order:

- Name of Each Entity with an Interest in the Cash Collateral: ORIX Capital Markets, LLC, Varian Medical Systems International AG, and JPMorgan Chase Bank, N.A.

- Purpose for the Use of Cash Collateral: Interim Order, ¶ 3

- Material Terms, Including Duration, of the Use of Cash Collateral: Interim Order, ¶¶ 3, 4, 16

- Any Liens, Cash Payments, or Other Adequate Protection for Cash Collateral: Interim Order, ¶ 15.

21.     The provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi), to the extent applicable, are set out at the following sections of the Interim Order:

- Grant of Priority or a Lien on Property of the Estate Under Section 364(c) or (d): Interim Order, ¶¶ 8, 10

- Adequate Protection or Priority for a Claim that Arose before the Commencement of the Case, or the Use of Credit Obtained under § 364 to Make Cash Payments on Account of the Claim: Interim Order, ¶¶ 3, 15, 42

- Determination of Validity, Enforceability, Priority, or Amount of a Claim that Arose Before the Commencement of the Case. Interim Order, ¶¶ E, 35

- Waiver or Modification of the Automatic Stay: Interim Order, ¶¶ 9, 24

- Waiver or Modification of Authority to File a Plan, Seek an Extension of Exclusivity, Request Use of Cash Collateral, or Request Authority to Obtain Credit: n/a

- Establishment of Deadlines for Filing a Plan of Reorganization, for Approval of a Disclosure Statement, for a Hearing on Confirmation or Entry of a Confirmation Order: n/a

- Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection of a Lien on Property of the Estate, or on the Foreclosure or Other Enforcement of the Lien: Interim Order, ¶ 35

- Release, Waiver, or Limitation on Any Claim or Cause of Action Belonging to the Estate: Interim Order, ¶¶ 35, 36

- Indemnification of Any Entity: Interim Order, ¶ 25

- Release, Waiver, or Limitation on Rights Under Section 506(c): Interim Order, ¶ 34

- Liens Granted on Claims Arising Under Chapters 5 or 7: Interim Order, ¶¶ 8, 15

**b.    Local Rule 4001-2**

22.    Local Bankruptcy Rule 4001-2 requires that certain provisions contained in the DIP Orders or DIP Loan Documents be highlighted and that the Debtor provides justification for the inclusion of such highlighted provisions.  The Debtor believes that the following provisions of the Interim Order and the Term Sheet are required to be identified in accordance with Local Bankruptcy Rule 4001-2 and that such provisions are justified and necessary in the context and circumstances of this Chapter 11 Case.  If a provision of Local Bankruptcy Rule 4001-2 is not discussed below, it means that the Interim Order or the Term Sheet does not contain a provision

that triggers disclosure under that Rule.

          (1)      Local Rule 4001-2(a)(i)(B)

23.     This Local Rule requires the Debtor to identify "[p]rovisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters." Local R. Bankr. P. 4001-2(a)(i)(B).

24.     Paragraph 35 of the Interim Order, which implements the stipulations set forth in Paragraph E of the Interim Order, provides:

        (a)     Generally. The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph E above of this Interim Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtor, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, any Committee, unless, and solely to the extent that, a party-in-interest with standing and requisite authority, (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 16 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than the earlier of (x) with respect to the Committee (if appointed) sixty (60) calendar days from the formation of the Committee and (y) with respect to other parties-in-interest with requisite standing, seventy-five (75) calendar days from the Petition Date (such time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 35, the "Challenge Deadline"), as such date may be extended in writing from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)    <u>Binding Effect</u>. To the extent any Prepetition Lien and Claim Matter is not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Interim Order become binding, conclusive and final on any person, entity or party-in-interest in the Chapter 11 Case, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Debtor's estate. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition Financing Documents.

Interim Order, ¶ 35.

25.    As shown above, the Interim Order acknowledges the validity and priority of the Prepetition Obligations and the Prepetition Liens. The Debtor, any committee, and any other party in interest with standing, however, will maintain the right, discussed above, to assert a Challenge by the Challenge Deadline. If any committee is formed, its Challenge Deadline will be 60 days after the date of formation. This timeframe, by itself, would not trigger the disclosure requirements of Local R. Bankr. P. 4001-2(a)(i)(B). The Challenge Deadline for all other parties in interest, however, is 75 days following the Petition Date. This timeframe requires disclosure under Local R. Bankr. P. 4001-2(a)(i)(B) because the 75-day Challenge Period for all other parties in interest begins on the Petition Date and not on the date of entry of the Interim Order.

26.    Local Bankruptcy Rule 4001-2(b) provides that the Court shall not approve the inclusion of the slightly-limited Challenge Period in paragraph 35 in an interim order absent

"extraordinary circumstances."    Local R. Bankr. P. 4001-2(b).    Here, extraordinary

circumstances warrant the relief sought by the Interim Order.  Simply put, the DIP Facility and

the use of Cash Collateral are necessary for the Debtor's reorganization, and the such funds can

only be obtained on terms acceptable to the DIP Secured Parties; a condition of such consent is

the relatively standard Challenge Period contained in the Interim Order.  Absent such Challenge

Period, the Debtor will have no cash to operate its business, and it will quickly be forced to shut

down, thereby destroying its going concern value to the detriment of all parties, most notably the

patients who receive treatment at the Proton Center, as well as the Debtor's creditors.  Thus,

extraordinary circumstances – the necessity of the DIP Facility and the use of Cash Collateral –

warrant the entry of the Interim Order.

(2)    Local Rule 4001-2(a)(i)(D)

27.    This Local Rule requires the Debtor to identify "[p]rovisions that immediately

grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising

under 11 U.S.C. §§ 544, 545, 547, 548 and 549."  Local R. Bankr. P. 4001-2(a)(i)(D).

28.    Paragraph 8(ii) of the Interim Order states:

> As security for the full and timely payment of the DIP Obligations, the DIP
> Administrative Agent on its behalf and on behalf of the DIP Lenders is hereby
> granted, subject to the Carve-Out (as defined below), the following liens and
> security interests on the DIP Collateral: … (ii) pursuant to section 364(c)(2) of the
> Bankruptcy Code, a first-priority valid and perfected lien on and security interest
> in all unencumbered property of the Debtor or its estate, including without
> limitation, following entry of the Final Order, on proceeds of actions pursuant to
> sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy
> Code "Avoidance Action Proceeds").

Interim Order, ¶ 8(ii).

29.    Paragraph 15(i) of the Interim Order further states:

> [t]he Prepetition Agents, on behalf of themselves and the Prepetition
> Lenders, shall be granted for their benefit, effective and perfected as of the
> date of entry of this Interim Order and without the necessity of the
> execution or filing of mortgages, security agreements, pledge agreements,

> financing statements or other agreements, a replacement security interest in and lien on all assets and property of the Debtor whether arising prepetition or postpetition of any nature whatsoever, including, without limitation, following entry of the Final Order, Avoidance Action Proceeds (the "<u>Adequate Protection Liens</u>"), which liens and security interests are junior and subordinate to (x) the Carve-Out, and (y) the DIP Obligations, the DIP Liens and the DIP Superpriority Claims.  The Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Loan Documents.

Interim Order, ¶ 15(i).

30.    Paragraph 8(ii) grants a DIP Lien on the Avoidance Action Proceeds to the DIP Secured Parties, subject to the Carve-Out.  Paragraph 15(i), in turn, grants an Adequate Protection Lien to the Prepetition Secured Parties, subject to the Carve-Out and the DIP Liens. Importantly, both the DIP Liens and the Adequate Protection Liens on the Avoidance Actions are subject to entry of the Final Order.  Thus, the Debtor respectfully submits that the grant of such liens will not be "immediate," and as a consequence, will not be within the purview of this Local Rule.  Furthermore, by conditioning these liens on the entry of the Final Order, parties in interest will have an opportunity to be heard and, as such, will have adequate notice.

(3)    Local Rule 4001-2(a)(i)(E)

31.    This Local Rule requires the Debtor to identify "[p]rovisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b)."  Local R. Bankr. P. 4001-2(a)(i)(E).

32.    Paragraph 3 of the Interim Order provides:

> The Debtor is hereby authorized to use Cash Collateral and the proceeds of any borrowings under the DIP Facility strictly in accordance with the DIP Budget (as may be amended from time to time with the consent of the DIP Administrative Agent in accordance with this Interim Order and the

DIP Loan Documents) and the other terms and conditions set forth in this Interim Order and the DIP Loan Documents, including, without limitation: (i) upon the entry of the Final Order, to repay a portion of the Prepetition Facility, in the amount of $16,000,000.00 (the "Rollup Amount"), which amount will be applied (x) *first*, to the Tranche C Notes and (y) *second,* to a pro rata portion of the aggregate outstanding principal of Tranche A Notes in accordance with the DIP Term Sheet, (ii) to pay all fees due to the DIP Secured Parties and all professional fees and expense (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the DIP Secured Parties, including those incurred in connection with the preparation, negotiation, documentation and Court approval of the DIP Facility, including, without limitation, the fees set forth in Annex III of the DIP Term Sheet, provided that, upon the Closing Date (as defined in the DIP Term Sheet), the amount of each DIP Lenders' respective Upfront Fee (as defined in Annex III of the DIP Term Sheet) shall be ratably added to such DIP Lenders' then-outstanding DIP Loans and shall constitute principal thereof for all purposes under this Interim Order and the DIP Loan Documents (such amount the "Upfront Fee Amount"), (iii) to make all adequate protection payments to the Prepetition Secured Parties as set forth herein, and (iv) to provide working capital, and for other general corporate purposes of the Debtor, and to pay administration costs of the Chapter 11 Case and claims or amounts approved by the Bankruptcy Court. The Debtor shall not distribute, convey or pay any proceeds of the DIP Facility or any Cash Collateral to any of the Debtor's direct or indirect equity owners. Upon the entry of the Final Order, the Prepetition Obligations, solely in the Rollup Amount, shall be deemed issued and outstanding under the DIP Loan Documents as DIP Obligations.

Interim Order, ¶ 3.

33.     This paragraph authorizes the Debtor to use Cash Collateral and the proceeds of the DIP Facility provided the DIP Secured Parties, which are all Prepetition Secured Parties, to repay up to $16 million of the amount due under the Prepetition Facility. The payment of this "Rollup Amount," however, is subject to the entry of the Final Order. Thus, parties in interest will have an opportunity to be heard and, as such, will have adequate notice.

(4)     Local Rule 4001-2(a)(i)(H)

34.     This Local Rule requires the Debtor to identify "[p]rovisions that seek to affect the Court's power to consider equities of the case under 11 U.S.C. § 552(b)(1)." Local R. Bankr. P. 4001-2(a)(i)(H).

35. Paragraph 36 of the Interim Order provides:

> Subject to the entry of the Final Order, each of the DIP Lenders, the DIP Administrative Agent, and the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b). The "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the DIP Lenders, the DIP Administrative Agent and Prepetition Secured Parties with respect to (i) proceeds, products or profits of any of the Prepetition Collateral, including Cash Collateral, or DIP Collateral, as applicable or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

Interim Order, ¶ 36.

36. This paragraph provides the DIP Lenders, the DIP Administrative Agent, and the Prepetition Secured Parties with certain exemptions from the "equities of the case" exception under 11 U.S.C. § 552(b). As with the payment of the Rollup Amount, however, this exemption is subject to the entry of the Final Order, which provides parties in interest with notice of this provision.

**Basis for Relief Requested**

37. The preservation of the value of the Debtor's business and the success of the timing of the Debtor's reorganization efforts hinge on obtaining access to sufficient postpetition financing. The Debtor's ability to conduct a potential sale depends heavily upon the immediate approval of this Motion. The Debtor's request authorization to obtain advances under the DIP Facility pursuant to the DIP Loan Documents and to use the Cash Collateral. The Debtor intends to use these funds to, among other things, fund its operations and to explore the potential sale of all or substantially all of its assets.

**I.    The Debtor Should be Authorized to Obtain Postpetition Financing Through the DIP Loan Documents**

38. As set forth above, the DIP Facility and the Cash Collateral are the only financing available in an amount and under the terms required by the Debtor at this time. The Debtor has been unable to procure sufficient financing: (a) in the form of unsecured credit allowable under

section 503(b)(1) of the Bankruptcy Code; (b) solely as an administrative expense under section 364(a) and (b) of the Bankruptcy Code; or (c) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code.  Thus, based on the foregoing and for the reasons set forth below, the Debtor submits that it has satisfied the requirement to access postpetition financing on a superpriority, secured basis pursuant to section 364 of the Bankruptcy Code and their proposed grant of adequate protection to the Prepetition Secured  Lenders and Varian is appropriate.

### A.    Entry into the DIP Financing Documents is an Exercise of the Debtor's Sound Business Judgment

39.    The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the DIP Loan Documents, obtain access to the DIP Facility, and continue using the Cash Collateral.  Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below.  Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code.  *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

40.     Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

41.     Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co.* (*In re Elingsen McLean Oil Co., Inc.*), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). The Court may also appropriately take into consideration non-economic benefits to the Debtor offered by a proposed postpetition facility. For example, in *In re ION Media Networks, Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, include the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain creditor from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.* This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 29025677, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

42.     The Debtor's determination to move forward with the DIP Facility is an exercise of its sound business judgment following an arm's-length process and careful evaluation of alternatives.   Specifically, and in the face of insufficient cash on hand, the Debtor and its advisors determined that the Debtor would require significant postpetition financing to support its operational and chapter 11 activities.   The Debtor negotiated the DIP Term Sheet and other DIP Loan Documents with the DIP Secured Parties in good faith, at arm's-length, and with the assistance of their respective advisors, and the Debtor believes that it has obtained the best financing available.   Accordingly, the Court should authorize the Debtor's entry into the DIP Facility, as it is a reasonable exercise of the Debtor's business judgment.

**B.      The Debtor Should be Authorized to Grant Liens and Superpriority Claims**

43.     The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth in the DIP Term Sheet and other DIP Loan Documents pursuant to sections 364(c) and (d) of the Bankruptcy Code; specifically, the Debtor proposes to provide to the Postpetition Secured Parties perfected first priority claims, priming liens, and security interests in the DIP Collateral and the Prepetition Collateral.

44.     The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).   Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.   Specifically, courts look to whether:

- the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative

expense claim;

- the credit transaction is necessary to preserve the assets of the estate; and

- the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*See In re Ames Dep't Stores*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary*

*Hosp.*, 86 B.R. 401-02 (Bankr. E.D. Pa. 1998); *Crouse Grp.*, 71 B.R. at 549.

45.     The Debtor is in need of an immediate capital infusion, yet current market conditions are challenging and the Debtor's existing reserves are encumbered by the Prepetition Liens.   Therefore, the Debtor, in consultation with its advisors, concluded that any workable financing likely would require the support of, or be provided by, the Debtor's existing lenders. Without postpetition financing, the Debtor lacks sufficient funds to operate its business, continue providing care to patients, continuing paying debts as they come due, or cover the projected costs of this Chapter 11 Case.   Absent the DIP Facility, which will allow the Debtor to meet its working capital needs during this Chapter 11 Case and potentially consummate a proposed sale of substantially all of the Debtor's assets, the value of the Debtor's estate would be significantly impaired to the detriment of all stakeholders.   Given the Debtor's circumstances, the Debtor believes that the terms of the DIP Facility, as set forth in the Term Sheet, the Interim Order, and the DIP Loan Documents, are fair, reasonable, adequate.   For all these reasons, the Debtor submits that it has met the standard for obtaining secured postpetition financing.

46.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) provides that a court "may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." As

described above, the Debtor is unable to obtain unsecured credit. Therefore, approving a superpriority claim in favor of the Postpetition Secured Parties is reasonable and appropriate.

47.     Further, section 364(d) provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien, after notice and a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). Consent by the secured creditors to priming obviates the need to show adequate protection. *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected."). Accordingly, the Debtor may incur "priming" liens under the DIP Facility if either (a) the Prepetition Lenders and Varian have consented or (b) the Prepetition Lenders' and Varian's interests in their respective collateral are adequately protected.

48.     Here, the Prepetition Lenders and Varian have consented to the DIP Facility and their interests in their respective collateral are adequately protected. Therefore, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is appropriate.

49.     With respect to Scripps, to the extent that it is entitled to any adequate protection for its possessory interest in the Proton Center, this interest is adequately protected under the DIP Facility. In the absence of the DIP Facility, the Proton Center would be non-operational, rendering Scripps' interest worthless. By keeping the Proton Center operational during this restructuring, the DIP Facility is providing Scripps with an opportunity to realize value from its interest that would not be available in the absence of the DIP Facility. In this regard, Scripps' interest is adequately protected.

### C.    No Comparable Alternative to the DIP Facility is Reasonably Available

50.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).    Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37-39 (debtor must show that it made reasonable efforts to seek other sources financing section 364(a) and (b)).

51.    As noted above, the Debtor does not believe that alternative sources of financing are reasonably available given the realities imposed by the Debtor's existing capital structure. The Debtor's Prepetition Secured Parties assert that all of the Debtor's existing assets are encumbered under the Debtor's existing capital structure.    Thus, the Debtor has determined that the DIP Facility provides the best opportunity available to the Debtor to fund this Chapter 11 Case.    Therefore, in addition to evidence to be introduced at the hearing on the Interim Order if necessary, the Debtor submits that the requirement of section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtor is satisfied.

**D.     The Repayment Feature of the DIP Facility Under the Final Order is Appropriate**

52.     Section 363(b) of the Bankruptcy Code permits a debtor, with court approval, to use, sell or lease property, other than in the ordinary course of business.  It is well settled in the Third Circuit that the court should approve such transactions when they are supported by a sound business purpose.  *See In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986) (holding that in the Third Circuit, a debtor's use of assets outside the ordinary course of business under section 363(b) should be approved if the debtor can demonstrate a sound business justification for the proposed transaction).  Decisions to use property of the estate fall within the business judgment rule, which shields a debtor's management from judicial second-guessing.  *In re Johns-Manville Corp.*., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

53.     The DIP Facility requires that $16 million of Prepetition Obligations will be repaid on upon the entry of the Final Order.  Accordingly, $16 million will be "rolled-up" into the DIP Facility.  This is a sound exercise of the Debtor's business judgment.  The repayment of this portion of the Prepetition Facility is a material component of the structure of the DIP Facility and was required by the DIP Secured Parties as a condition to their commitment to provide postpetition financing.  Absent the DIP Facility, the Debtor's ability to continue operating as a going concern will be jeopardized to the detriment of all parties in interest.  Given these circumstances, repayment of a portion of the Prepetition Facility is reasonable, appropriate, and a sound exercise of the Debtor's business judgment.

54.     Furthermore, repayment of prepetition debt (often referred to as a "roll-up"), as required by the DIP Facility, is a common feature in debtor-in-possession financing arrangements, and courts in this jurisdiction have approved similar DIP features, including on the

first day of the case. *See, e.g., In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 5, 2014) (authorizing approximately $200 million DIP that included roll-up of approximately $144 million prepetition debt pursuant to interim order); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Sept. 11, 2013) (authorizing approximately $140 million DIP that included roll-up of approximately $91 million prepetition debt pursuant to interim order); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (authorizing approximately $140 million DIP that included roll-up of approximately $48.6 million prepetition debt pursuant to interim order); *In Ne Dayton Superior Corp.*, No. 09-11351 (BLS) (Bankr. D. Del. Apr. 21, 2009) (authorizing approximately $165 million DIP that included roll-up of approximately $110 million prepetition debt pursuant to interim order).  The Court should likewise approve this provision here.

## II.   The Debtor Should be Authorized to Use the Cash Collateral

55.    Section 363 of the Bankruptcy Code generally governs the use of estate property. Section 362(c)(2)(A) permits a debtor in possession to use cash collateral with the consent of the secured party.  Here, the Prepetition Secured Parties consent to the Debtor's use of the Cash Collateral, subject to the terms and limitations set forth in the DIP Orders, including the adequate protection provisions provided to the Prepetition Secured Parties in these Orders.

56.    The Adequate Protection Obligations provided to the Prepetition Secured Parties in the DIP Orders are appropriate.  Section 363(c) provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests of property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996 (en banc)).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as getting replacement liens and administrative expense claims, courts decide what constitutes adequate

protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also Dynaco Corp.*, 162 B.R. 39, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankr. ¶ 361.01[1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of such proceeding")).

57.     As described more fully above, and as set forth in the DIP Orders, the Debtor proposes to provide the Prepetition Secured Parties with the following adequate protection to protect against the postpetition diminution in value of the Cash Collateral arising from the use, sale, or lease of the Cash Collateral by the Debtor and the imposition of the automatic stay (collectively, the "***Adequate Protection Obligations***"):

(a)     valid and automatically protected replacement liens on all assets and property of the Debtor, junior and subordinate only to the Carve-Out, the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims;

(b)     an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code with priority over all other administrative expenses, subject and subordinate to the Carve-Out, the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims;

(c)     adequate protection payments in the amount of the fees and expenses of the Prepetition Agent and the Prepetition Lenders, including the reasonable fees and expenses of the Prepetition Secured Parties' counsel and financial advisor; and

(d)     continued financial and other reporting in compliance with the Prepetition Documents.

58.     The Debtor submits that the proposed Adequate Protection Obligations are sufficient to protect the Prepetition Secured Parties from any diminution in value to the Cash Collateral, and are appropriate.    Thus, the Debtor's provision of the Adequate Protection

Obligations is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of this Chapter 11 Case to ensure the Debtor is able to continue using Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and the Debtor's estate.

**III.    The Postpetition Secured Parties Should be Deemed Good-Faith Lenders Under Section 364(e)**

59.    Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority to obtain such loans or grant such liens is later reversed or modified on appeal.  Section 364(e) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under this section [of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

60.    As explained herein, the DIP Loan Documents are the result of: (a) the Debtor's reasonable and informed determination that the Postpetition Secured Parties offered the most favorable terms on which to obtain vital postpetition financing and (b) extended arms'-length, good-faith negotiations between the Debtor and the DIP Agent and the DIP Lenders.  The Debtor submits that the terms and conditions of the DIP Loan Documents are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code.  Further, no consideration is being provided to any party to the DIP Loan Documents other than as described herein or in the DIP Loan Documents.  Accordingly, the Court should find that the Postpetition Secured Parties are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

**IV.    The Automatic Stay Should be Modified on a Limited Basis**

61.    The proposed Interim Order provides that the automatic stay should be vacated and modified to (a) permit the Debtor to grant the liens and security interests to DIP Secured Parties and the Prepetition Agent as contemplated by the Interim Order and the other DIP Loan Documents; and (b) to permit the DIP Secured Parties, upon the occurrence and continuation of an Event of Default, to exercise all rights and remedies set forth in the DIP Loan Documents with respect to the DIP Collateral.

62.    Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this Chapter 11 Case.  *See, e.g., In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Dec. 15, 2015) (terminating automatic stay after event of default); *In re Peak Broad, LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event); *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Jan. 17, 2012) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Broadway 401 LLC,* No. 10-10070 (KJC) (Bankr. D. Del. Feb. 16, 2010 (same); *In re Haights Cross Commc'ns, Inc.*, No. 10-10062 (BLS) (Bankr. D. Del. Feb. 8, 2010) (same).   They should likewise be approved here.

**V.    Approval of the DIP Facility on an Interim Basis is Necessary to Prevent Immediate and Irreparable Harm**

63.    Bankruptcy Rules 4001(b) an 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.   Also, to the extent

that the Debtor is seeking authority to sell, use, or otherwise incur an obligation regarding property its estate, Bankruptcy Rule 6003 provides that the Court may only grant such relief to the extent it is necessary to avoid "immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).

64.     In examining requests for interim relief under the "immediate and irreparable harm" standard, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g., Ames Dep't Stores*, 115 B.R. at 36.  After the 14-day period, the request for financing is not limited to those amounts necessary to prevent the destruction of the debtor's business, and the debtor is entitled to borrow those amounts that it believes are prudent to the operation of its business.  *Id.*

65.     Immediate and irreparable harm would result if the relief requested herein is not granted on an interim basis.  As described above and in the First-Day Declaration, the Debtor needs to access liquidity under the DIP Facility in order to, among other things, satisfy its working capital and operational needs and preserve the going concern value of the Debtor's estate.  Funding these expenditures is necessary to the Debtor's ability to preserve its value for the benefit of all parties in interest pending a potential sale of the Debtor's assets.

66.     Accordingly, under these circumstances, entry of the Interim Order is necessary to prevent immediate and irreparable harm to the Debtor's estate, and, therefore, is warranted under the requirements of the Bankruptcy Rules.

### Request for Final Hearing

67.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and in no event later than thirty (30) days after the Petition Date, and to fix the time and date prior to the Final Hearing for parties to file objection to this Motion.

**Request for Waiver of Stay**

68.     The Debtor further seeks a waiver of any stay of the effectiveness of the Interim Order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "a[n] order authorizing the use, sale, or lease of a property other than cash collateral is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the DIP Facility is essential to prevent irreparable damage to the Debtor's operations, value, ability to provide care to the Proton Center's patients, and potential to conduct sale of substantially all of its assets.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 10-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

**Notice**

69.     Concurrent with the filing of this Motion, the Debtor is providing notice of the Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the administrative agent, and counsel for the administrative agent, for the Debtor's prepetition and postpetition secured lenders; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the California Franchise Tax Board; (h) counsel for Varian; (i) Scripps; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

70.     As this Motion is seeking "first-day" relief, within two business days of the hearing on this Motion, the Debtor will serve copies of this Motion and any order entered with respect to this Motion pursuant to Local Rule 9013-1(m).

71.     The Debtor respectfully submits that, in like of the nature of the relief requested and the circumstances, no other or further notice need be given.

**No Prior Request**

72.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court grant the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 1, 2017
          Wilmington, Delaware

POLSINELLI PC

_____
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
Email:        cward@polsinelli.com
                  jedelson@polsinelli.com

- and -

LOCKE LORD LLP
David W. Wirt (*pro hac vice pending*)
Aaron C. Smith (*pro hac vice pending*)
Phillip W. Nelson (*pro hac vice pending*)
Brian A. Raynor (*pro hac vice pending*)
111 S. Wacker Drive
Chicago, Illinois  60606-4410
Telephone: (312) 443-0700
Facsimile: (312) 443-0336
Email:        dwirt@lockelord.com
                  asmith@lockelord.com
                  phillip.nelson@lockelord.com
                  braynor@lockelord.com

*Proposed Counsel to the Debtor*