**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CALIFORNIA PROTON TREATMENT CENTER, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 17-10477 (LSS) |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE, TO (I) RETAIN CARL MARKS ADVISORY GROUP LLC TO PROVIDE THE DEBTOR A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, AND (II) APPOINT J. JETTE CAMPBELL AS CHIEF RESTRUCTURING OFFICER**

California Proton Treatment Center, LLC (the "**Debtor**"), as debtor and debtor in possession in the above-captioned case, hereby files its *Motion for Entry of an Order Authorizing the Debtor, Nunc Pro Tunc to the Petition Date, to (I) Retain Carl Marks Advisory Group LLC to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (II) Appoint J. Jette Campbell as Chief Restructuring Officer* (the "**Motion**"), and respectfully states as follows:

**Relief Requested**

1. The Debtor seeks entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") authorizing, *nunc pro tunc* to the Petition Date, (a) the retention of Carl Marks Advisory Group LLC ("**CMAG**") to provide the Debtor a Chief Restructuring Officer ("**CRO**") and certain additional personnel, and (b) the appointment of J. Jette Campbell ("**Mr. Campbell**"), a partner at CMAG, to serve as the Debtor's CRO on the terms set form in the Debtor's Consulting Agreement with CMAG (the "**Consulting Agreement**"), attached hereto as **Exhibit B.1** and incorporated herein by reference, and the

---

[1] Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are 9073. The location of the Debtor's place of business is 9730 Summers Ridge Rd., San Diego, CA 92121, Attn: Wilson Williams, Manager.

Amendment No. 1 to Consulting Agreement (the "**Consulting Agreement Amendment**" and together with the Consulting Agreement, the "**Engagement Agreement**"), attached hereto as **Exhibit B.2** and incorporated herein by reference.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, date February 29, 2012.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by this Court in connection with this Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The basis for the relief requested in this Motion are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

## General Background

6. The Debtor operates an approximately 100,000 square-foot, purpose-built proton therapy facility in San Diego, California (the "**Proton Center**").

7. A detailed description of the Debtor's business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case (the "**Chapter 11 Case**"), is set forth in greater detail in the *Declaration of J. Jette Campbell, in Support of Chapter 11 Petitions and First-Day Motions* (the "**First-Day Declaration**"), filed on March 1, 2017 and incorporated herein by reference. In further support of this Motion, the Debtor submits the Declaration of J.

Jette Campbell, a partner of CMAG (the "***CMAG Declaration***"), a copy of which is attached hereto as **Exhibit B**, and incorporated herein by reference.

8. On March 1, 2017 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

9. No request for the appointment of a trustee or an examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

10. Beginning in January 2017 and continuing through the Petition Date, several professionals of CMAG, including Mr. Campbell, have devoted substantial amounts of time and effort working with members of the Debtor's senior management to, among other things, assist in the development of near-term projections, assist in short-term cash management activities and coordinate the Debtor's efforts to prepare for a chapter 11 filing.

11. The Debtor chose CMAG to provide Mr. Campbell as CRO because of CMAG's extensive experience providing restructuring services in reorganization proceedings and its excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Moreover, the Debtor chose CMAG and Mr. Campbell because of the in-depth knowledge and familiarity that CMAG had garnered regarding the Debtor and its business operations in the period leading up to the Petition Date in the role of restructuring consultants, and the belief that by continuing the existing relationship with CMAG, rather than retaining a new advisory firm, the Debtor could minimize disruptions to its restructuring efforts that might otherwise arise from the appointment of a new CRO.

12. Accordingly, effective on January 30, 2017, the Debtor and CMAG entered into the Engagement Agreement, as subsequently amended, under which the parties have agreed that Mr. Campbell, a partner within CMAG, will serve as the Debtor's CRO. Further, CMAG has agreed to provide other CMAG employees ("**Additional Personnel**," and collectively with Mr. Campbell "**CMAG Professionals**") as necessary to support Mr. Campbell and the Debtor's existing management team in their restructuring efforts during this Chapter 11 Case.

### Basis for Relief

13. By this Motion, the Debtor seeks authorization pursuant to sections 105(a) and 363 of the Bankruptcy Code to retain CMAG to provide the Debtor with a CRO and certain addition personnel, and to appoint Mr. Campbell as the Debtor's CRO on the terms set forth in the Engagement Agreement. Accordingly, the Debtor respectfully requests entry of an order, in substantially the form attached as **Exhibit A**, authorizing the Debtor, *nunc pro tunc* to the Petition Date, to (a) retain CMAG to provide the Debtor a CRO and certain additional personnel, and (b) appoint Mr. Campbell as the Debtor's CRO on the terms set forth in the Engagement Agreement.

14. The Debtor seeks to employ and retain CMAG and appoint Mr. Campbell as CRO pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts within the Third Circuit routinely have held that if such use represents the debtor's reasonable business judgment, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D.

Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

15. Bankruptcy courts have analyzed the propriety of a debtor in possession's employment of a corporate officer under section 363 of the Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise of business judgment to employ a corporate officer in such manner. *See, e.g.*, *In re Palm Harbor Homes, Inc.*, No. 10-13850 (CSS) [Dkt. No. 146] (Bankr. D. Del. Dec. 22, 2010); *In re Universal Building Prods., Inc.*, No. 10-12453 (MFW) (Bankr. D. Del. Aug. 4, 2010); *In re Sharper Image Corp.*, No. 08-10322 (KG) (Bankr. D. Del. Apr. 23, 2008); *In re Calpine Corp.*, Case No. 05-60200 (BRL) [Dkt. No. 3412] (Bankr. S.D.N.Y. Jan. 17, 2007); *In re Mirant Corp.*, Case No. 03-46590 (DML) [Dkt. No. 999] (Bankr. N.D. Tex. Sept. 29, 2003); *In re Fleming Cos. Inc.*, Case No. 03-10945 (MFW) [Dkt. No. 1698] (Bankr. D. Del. June 25, 2003); *In re LJM2 Co-Inv. L.P.*, Case No. 02-38335 (SAF) [Dkt. No. 96] (Bankr. N.D. Tex. Dec. 13, 2002); *In re Kmart Corp.*, No. 02-02474 (SPS) [Dkt. No. 3459] (Bankr. N.D. Ill. May 22, 2002); *In re Exide Techs., Inc.*, Case No. 02-11125 (JCA) [Dkt. No. 214] (Bankr. D. Del. May 10, 2002).

16. Here, the decision to employ CMAG and retain Mr. Campbell as CRO should be authorized because it is based on the sound exercise of the business judgment of the Debtor's senior management. First, Mr. Campbell is well qualified to serve as CRO. He has extensive experience either in senior management roles or as a restructuring advisor for several large companies, and is a seasoned turnaround and restructuring expert. In addition, CMAG has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of

debtors and creditors throughout the United States. The assistance of these experts cannot be questioned.

17. Second, Mr. Campbell and the CMAG team, working in conjunction with the Debtor's senior management, have already proven to be of invaluable assistance in the Debtor's efforts in the development of near-term projections, assisting in short-term cash management activities and coordinating the Debtor's efforts to prepare for a possible chapter 11 filing. The Debtor believes that CMAG, in conjunction with Mr. Campbell in his capacity as CRO, is able to continue providing services that benefit the Debtor's estate and creditors. Moreover, the preexisting relationship that CMAG and Mr. Campbell have with the Debtor ensures that the appointment of a CRO at this juncture will not disrupt the administration of the Chapter 11 Case.

18. Third, through negotiations, the Debtor has been able to secure the services of CMAG and Mr. Campbell during this Chapter 11 Case on economic terms that are fair and reasonable and beneficial to the estate. Moreover, the compensation arrangement provided for in the Engagement Agreement is consistent with and typical of arrangements entered into by CMAG and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtor.

19. In view of the foregoing, the Debtor believes that the retention of CMAG and Mr. Campbell as CRO is a sound exercise of the Debtor's business judgment and is in the best interests of all parties in interest in this Chapter 11 Case. The Debtor believes that CMAG is well-qualified and able to represent the Debtor in a cost effective, efficient, and timely manner. CMAG has indicated a willingness to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court. For the reasons set forth below, the Debtor respectfully requests that the Court authorize the retention and employment of CMAG as the

57565224.1

Debtor's restructuring advisor and Mr. Campbell as the Debtor's CRO pursuant to section 363 of the Bankruptcy Code.

**I.     Qualifications of CMAG.**

20.     In consideration of the size and complexity of its business, as well as the exigencies of the circumstances, the Debtor has determined that the services of experienced restructuring managers will substantially enhance its efforts to maximize the value of its estate. The CMAG Professionals are well-qualified to act on the Debtor's behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

21.     The CMAG Professionals specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring.  CMAG's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

22.     Indeed, CMAG has significant qualifications and experience in these matters. Since its inception in 1991, CMAG has been a global provider of turnaround advisory and interim or restructuring management services to companies in crisis or those in need of performance improvement in specific financial and operational areas.  CMAG has provided interim management services in a number of large and mid-size bankruptcy restructurings. *See, e.g.*, *In re Cal Dive International, Inc.*, 15-10458 (CSS) (Bankr. D. Del. 2015); *In re AWI Delaware, Inc.*, 14-12092 (KJC) (Bankr. D. Del. 2014); *In re Landauer Healthcare Holdings, Inc.*, 13-12098 (CSS) (Bankr. D. Del. 2013); *In re Contract Research Solutions, Inc.*, 12-11004

(KJC) (Bankr. D. Del. 2012); *In re Monitor Company Group LP*, 12-13042 (CSS) (Bankr. D. Del. 2012); *In re Alexander Gallo Holdings, LLC*, 11-14220-ALG (Bankr. S.D.N.Y. 2011); *In re Lenox Sales, Inc.*, Case No. 08-14679 (Bankr. S.D.N.Y. 2008); *In re Rowe Furniture, Inc.*, 06-11143-SSM (Bankr. E.D. Va. 2006); *In re Macro Wood Prods., Inc.*, 05-68820-TJT (Bankr. E.D. Mich. 2005); *Sw. Recreational Indus., Inc.*, 04-40656-PWB (Bankr. N.D. Ga. 2004); *In re Master Graphics, Inc./TN Corp.*, 00-02929-PJW (Bankr. D. Del 2000); *In re Axiom IPB, Inc.*, 99-04153-PJW (Bankr. D. Del. 1999).

23.  The Debtor's proposed CRO, Mr. Campbell, is a partner at CMAG who has worked as a financial professional and advisor for over 40 years, including 13 years as a restructuring advisor. Mr. Campbell has substantial knowledge and experience serving either in senior management positions or as a restructuring advisor in large companies and in assisting troubled companies with stabilizing their financial condition, analyzing their operations and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances. Specifically, Mr. Campbell has served in senior management positions and as a restructuring advisor for a number of companies that were chapter 11 debtors, including the following cases: *In re Belle Foods, LLC*, 13-81963-JAC (Bankr. N.D. Ala. 2013); *In re Moore-Handley, Inc.*, 09-04198-TBB (Bankr. N.D. Ala. 2009); *In re Manis Lumber Co.*, 08-40398-PWB (Bankr. N.D. Ga. 2008); *In re Joan Fabrics Corp.*, 07-10479-CSS (Bankr. D. Del. 2007).

24.  CMAG has become thoroughly familiar with the Debtor's operations. Through the services that CMAG has provided to the Debtor to date, CMAG is highly qualified to serve the Debtor in this case.

**II.      Services to be Rendered.**

25.    Under the Engagement Agreement, CMAG staff have assumed certain positions within the Debtor's business. Specifically, Mr. Campbell will serve as the Chief Restructuring Officer of the Debtor, reporting to the Board of Directors (the "***Board***"), and directing the Debtor's reorganization with an objective of completing a restructuring of the Debtor. Mr. Campbell will be responsible for assisting the Debtor's senior management team in their post-petition restructuring efforts, including negotiating with parties in interest and coordinating the "working group" of professionals who are or will be assisting the Debtor in the restructuring process or who are working for the Debtor's stakeholders.

26.    As members of the Debtor's senior management, Mr. Campbell, with the assistance of the Additional Personnel, will provide the senior management services that CMAG and the Debtor deem appropriate and feasible to assist the Debtor during this Chapter 11 Case. The Debtor believes that Mr. Campbell and the Additional Personnel will not duplicate the services that are being provided to the Debtor in this case by any other professionals.

27.    The duties of Mr. Campbell and the Additional Personnel will include, but are not limited to the following:

(a)    A financial review of the Debtor, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Debtor to its creditors, including without limitation its short and long-term projected cash flows;

(b)    Assist in the identification of cost reduction and operations improvement opportunities;

(c)    Develop for the Board's review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Debtor's various business lines;

(d) The CRO shall serve as the principal contact with the Debtor's creditors with respect to the Debtor's financial and operational matters;

(e) Assist the Debtor in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(f) Assist the Debtor and its counsel in the preparation of motions, pleadings and other activities necessary to implement a chapter 11 filing, if required;

(g) Assist the Debtor with information and analyses required pursuant to the Debtor's debtor-in-possession financing including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

(h) Advisory assistance in connection with the development and implementation of key employee incentives and other critical employee benefit programs;

(i) Assist with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

(j) Assist the Debtor in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(k) Attend meetings and assist in discussions with potential investors, banks and other secured lenders, any committees appointed in this Chapter 11 Case, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(l) Analyze creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims;

(m) Assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(n) Provide testimony with respect to financial and restructuring matters;

(o) Assist the Debtor and its counsel in preparing plans, disclosure statements and other pleadings;

(p) The CRO and any Additional Personnel shall perform such other services as requested or directed by the officers or the Board and agreed to by the CRO and any Additional Personnel.

**III.    Terms of Compensation.**

28.    Pursuant to the terms of the Engagement Agreement, as amended, the Debtor has agreed to compensate CMAG for its consulting services a fixed fee of $170,000 per monthly period.  The Debtor has agreed pay CMAG the fixed fee in advance and as follows: "in two equal installments in amounts equal to $85,000 each on the first (1st) and fifteenth (15th) day of each monthly period in which consulting services are to be provided." Ex. B.2 ¶ 1.

29.    The Debtor has also agreed to provide CMAG a retainer of $100,000 to be applied against any unpaid fees and expenses.  *See* Ex. B.1 ¶ 4.  Any unused portion of the retainer will be returned to the Debtor at the completion of CMAG's services under the Engagement Agreement.  CMAG will submit consulting service fee invoices for each payment due.  The Debtor has agreed that all of those invoices will be paid upon receipt.

30.    In addition to compensation for professional services rendered by CMAG Professionals, CMAG will seek reimbursement for reasonable and necessary expenses incurred in connection with this Chapter 11 Case, including, but not limited to, transportation of any of CMAG Personnel, employees or associates on business related to the Chapter 11 Case, cost of hotels, meals, research, etc.  The Debtor shall also reimburse CMAG for the reasonable fees and expenses of its outside counsel incurred in performance of CMAG's services under the Engagement Agreement, *provided however*, that the Debtor first consents to the retention of such counsel for such services (which consent shall not be unreasonably withheld or delayed).  All

expenses due to CMAG will be billed on a weekly basis, as further set forth in the Engagement Agreement. *See* Ex. B.1 ¶ 5.

31. If the Court approves the relief requested herein, CMAG will be retained to provide the Debtor with the Additional Personnel and Mr. Campbell will be designated as the Debtor's CRO pursuant to section 363 of the Bankruptcy Code. Because CMAG is not being employed as a professional under section 327 of the Bankruptcy Code, CMAG will not be required to submit fee Motions pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, CMAG will file with the Court, and provide notice to the U.S. Trustee and all official committees, if any, reports of compensation earned and expenses incurred on at least a quarterly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

32. Given the numerous issues which the CMAG Professionals may be required to address in the performance of their services, CMAG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements set forth in the Engagement Agreement are reasonable and reflect a proper exercise of the Debtor's business judgment.

**IV.    Indemnification and Insurance.**

33. Under the terms of the Engagement Agreement, the Debtor has agreed to indemnify CMAG and hold it harmless for all acts or omissions, and all decisions made, by CMAG (other than as a result of CMAG's gross negligence or willful misconduct) while performing services for the Debtor. The Debtor has further agreed to pay directly, upon presentation thereof, all statements or invoices for all fees and expenses, including reasonable attorneys' fees incurred by CMAG in connection with the defense of any such claims based on

CMAG's alleged acts, omissions or decisions (other than made or taken through gross negligence or willful misconduct), including any suit or proceeding relating thereto and any appeal therefrom and the costs of any settlement thereof, *provided* that with respect to costs incurred in any appeal of a judgment, the Debtor first consents to appealing such judgment (which consent shall not be unreasonably withheld or delayed). CMAG shall have the sole right to select counsel of its choosing and control the defense of any such claim, but the Debtor shall have the right to accept or reject the settlement of any claim for which indemnification is sought by CMAG (which acceptance or rejection shall not be unreasonably withheld or delayed). These indemnity obligations will survive the term of the Engagement Agreement.

**V.    Disinterestedness of CMAG.**

34.    Even though CMAG is not being retained as a professional under section 327(a) of the Bankruptcy Code, CMAG has performed a conflicts check in connection with its engagement with the Debtor. CMAG has informed the Debtor that, except as may be set forth in the CMAG Declaration attached hereto, CMAG (a) has no connection with the Debtor, its creditors or other parties in interest in this Chapter 11 Case, (b) does not hold any interest adverse to the Debtor's estate, and (c) believes it is "disinterested" as defined by section 101(14) of the Bankruptcy Code.

35.    If any new material facts or relationships are discovered or arise, CMAG will provide the Court with a supplemental declaration. CMAG has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this Chapter 11 Case.

<u>**Notice**</u>

36.    Concurrent with the filing of this Motion, the Debtor is providing notice of the Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders

of the 20 largest unsecured claims against the Debtor; (c) the administrative agent, and counsel for the administrative agent, for the Debtor's prepetition and postpetition secured lenders; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the California Franchise Tax Board; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.

37. Notice of this Motion will be served in accordance with Local Rule 9013-1(m).

38. The Debtor respectfully submits that, in light of the nature of the relief requested and the circumstances, no other or further notice need be given.

## No Prior Request

39. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully request that the Court: (i) enter an order in substantially the same form as that attached as **Exhibit A**, granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

57565224.1

Dated: March 10, 2017
    Wilmington, Delaware

POLSINELLI PC

*/s/ Justin K. Edelson*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
Email:    cward@polsinelli.com
            jedelson@polsinelli.com

- and -

LOCKE LORD LLP
David W. Wirt (*admitted pro hac vice*)
Aaron C. Smith (*admitted pro hac vice*)
Phillip W. Nelson (*admitted pro hac vice*)
Brian A. Raynor (*admitted pro hac vice*)
111 S. Wacker Drive
Chicago, Illinois  60606-4410
Telephone: (312) 443-0700
Facsimile: (312) 443-0336
Email:    dwirt@lockelord.com
            asmith@lockelord.com
            phillip.nelson@lockelord.com
            braynor@lockelord.com

*Proposed Counsel to the Debtor*

57565224.1