# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CALIFORNIA PROTON TREATMENT CENTER, LLC,[1] | Case No. 17-10477-LSS |
| Debtor. | **Re: Docket No. 95** |

**ORDER (A) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS IN CONNECTION WITH THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION
AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-captioned debtor as debtor in possession (the "***Debtor***") for entry of an order (this "***Order***") (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "***Bidding Procedures***") in connection with the sale of substantially all of the Debtor's assets (the "***Assets***"), (b) approving the form and manner of notice attached as **Exhibit 2** to the Bidding Procedures Order (the "***Sale Notice***") of an auction (the "**Auction**") and sale hearing (the "***Sale Hearing***") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "***Sale***"), (c) scheduling the Sale Hearing, (d) approving procedures for the possible assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Contracts***") and (e) authorizing the Debtor, in the exercise of its reasonable business judgment to (i) enter into a Stalking Horse agreement (the "***Stalking Horse Agreement***") if the Debtor believes that such an agreement will further the purposes of the

---

[1]    The last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business is 9730 Summers Ridge Road, San Diego, California 92121, Attn: Wilson Williams, Manager.

[2]    Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion.  In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

Auction by, among other things, enticing value-maximizing bids, and (ii) offer a Stalking Horse

bidder (the "***Stalking Horse Bidder***") any or all of the following (A) the Break-Up Fee (as

defined below) in an amount to be determined by the Debtor, not to exceed 3 percent of the total

purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement, (B) the

Expense Reimbursement (as defined below) of the Stalking Horse Bidder's reasonable and actual

fees and expenses incurred as the Stalking Horse Bidder, subject to a cap of $250,000, and

(C) initial overbid protection in an amount to be determined by the Debtor, to be announced prior

to the Auction (the "***Initial Overbid***" and, together with the Break-Up Fee and the Expense

Reimbursement, the "***Bid Protections***"); this Court having jurisdiction over this matter pursuant

to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012; this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); this Court having found that it

may enter a final order consistent with Article III of the United States Constitution; this Court

having found that venue of this proceeding and the Motion in this District is proper pursuant to

28 U.S.C. § 1408; this Court having found that the relief requested in the Motion is in the best

interests of the Debtor's estate, its creditors, and other parties in interest; this Court having found

that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "***Hearing***"); this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, THE COURT FINDS THAT:

A.       The findings and conclusions set forth in here constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, date February 29, 2012.

C.       This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor has confirmed its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), to the entry of a final order by this Court in connection with this Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.       Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1408.

E.       The bases for the relief requested in this Motion are sections 105(a), 363, 365, 503(b), and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), Bankruptcy Rules 2002, 6004, and 6006(a), 9007 and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.       Notice of the Motion has been given to: (a) the United States Trustee for the District of Delaware (the "***U.S. Trustee***"); (b) counsel to the administrative agent (the "***Agent***")

for the Debtor's prepetition and postpetition secured Lenders; (c) counterparties to the Contracts (the "**Contract Counterparties**"); (d) all parties who have expressed a written interest in the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) the California Franchise Tax Board; (hi) all other applicable state and local taxing authorities; (i) all the Debtor's other creditors; (j) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

G.      The Debtor has articulated good and sufficient reasons for this Court to (a) approve the Bidding Procedures; (b) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; (c) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts; (d) authorizing the Debtor, subject to consultation with the Agent, to enter into a Stalking Horse Agreement and extend to a Stalking Horse Bidder the Bid Protections in the exercise of its reasonable business judgment.

H.      The Break-Up Fee and the Expense Reimbursement: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (b) are commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Bidder; (c) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale

is subject to better and higher offers; and (d) were necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Agreement.

I.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtor and its estate.

J.      ***Assumption and Assignment Procedures.***    The Motion, this Order, and the assumption and assignment procedures (the "***Assignment Procedures***") set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

K.      ***Sale Notice.***    The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedure; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "***Interests***"), with all such Interests attaching with the same validity and priority to the Sale proceeds; (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder.  No other or further notice of the Sale shall be required.

        IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, or overruled.

3.      The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets.  Any party desiring to bid on the asset shall comply with the Bidding Procedures in this Order.  The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures.

**I.      Break-Up Fee and Expense Reimbursement**

4.      The Debtor is authorized, subject to the reasonable exercise of its business judgment and consultation with the Agent, to designate an agreement a "Stalking Horse Agreement" and enter into a Stalking Horse Agreement with a Qualified Bidder (the "***Stalking Horse Bidder***") no later than May 29, 2017 (the "***Stalking Horse Designation Deadline***"), and to offer the Stalking Horse Bidder (provided that the Stalking Horse Bidder is not the Agent or a Lender, an affiliate of the Agent or a Lender, or an insider the Debtor) any or all of the following protections:

(a)      a break-up fee (the "***Break-Up Fee***") in an amount to be determined by the Debtor, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement; and

(b)      reimbursement of the Stalking Horse Bidder's reasonable and actual fees and expenses incurred as the Stalking Horse Bidder up to $250,000 (the "***Expense Reimbursement***").

5.      With respect to a Stalking Horse Bidder that is the Agent, a Lender, or an affiliate of the Agent or a Lender, such Stalking Horse Bidder shall not be entitled to a Break-Up Fee as part of its Bid Protections, but may receive the Expense Reimbursement as a Bid Protection, pursuant to the terms of this Order.

6.      If a Stalking Horse Bidder is designated on or before the Stalking Horse Designation Deadline, the Debtor shall file a notice of designation of a Stalking Horse Bidder with the Court and serve the notice on all creditors and the U.S. Trustee.

7.      If the Debtor desires to designate a Stalking Horse Bidder after the Stalking Horse Designation Deadline but prior to the date of the Auction, the Debtor shall provide written notice of the Stalking Horse Bidder to the U.S. Trustee and, if the U.S. Trustee objects to granting such Stalking Horse Bidder the Bid Protections (as provided above), the Debtor may file a motion with the Court seeking relief to grant such Stalking Horse Bidder the Bid Protections.

8.      With respect to a Stalking Horse Bidder that is an insider of the Debtor, the Debtor may file a motion on an expedited basis with the Court for approval of granting Bid Protections to such Stalking Horse Bidder.

9.      The Debtor's obligation to pay the Break-Up Fee and the Expense Reimbursement shall survive the termination of the Stalking Horse Agreement and shall be payable only by the Debtor upon the closing of a Sale for the Assets with a Successful Bidder other than the Stalking Horse Bidder.  Nothing contained herein shall limit the ability of the U.S. Trustee to object to the reasonableness of the Expense Reimbursement.  The Break-Up Fee and the Expense Reimbursement shall be paid immediately upon consummation of the Sale out of the proceeds of the Sale and shall have priority as an administrative expense in the Debtor's chapter 11 case pursuant to section 503(b) and 507(a) of the Bankruptcy Code.

## II.      The Auction

10.      As further described in the Bidding Procedures, if a Qualified Bid, other than the Credit Bid (as defined below), is received by the Bid Deadline, the Debtor will conduct the Auction at 10:00 a.m. (prevailing Eastern Time) on June 15, 2017, at the offices of the Debtor's Delaware counsel, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington DE 19801 or

such later time on such day or other place as the Debtor shall notify all creditors and all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.

11.     If the Debtor does not receive a Qualified Bid (other than the Credit Bid); (a) the Debtor may, in consultation with the Consultation Parties, cancel the Auction; and (b) the Credit Bid may be deemed by the Debtor to be the Successful Bid for the Assets; and (c) the Debtor shall be authorized to seek approval of the Credit Bid as the Successful Bid at the Sale Hearing.

12.     If the Debtor receives a Qualified Bid (in addition to the Credit Bid), then the Debtor shall conduct the Auction in accordance with the Bidding Procedures.

13.     Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm that it is not engaged in any collusion with respect to the bidding, the Auction, or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

14.     The Agent shall be deemed to be a Qualified Bidder and, except as provided in the proviso at the end of this paragraph, is not required to make any Good Faith Deposit. The Agent may participate in the Auction and may credit bid at any time up to the conclusion of the Auction, in its sole and absolute discretion, any portion and up to the entire amount of the Agent's and the Lenders' respective claims, including, without limitation, both the Lenders' prepetition claims and all obligations under the DIP Order and/or the DIP Loan Documents (as defined in the DIP Order), at any time on any individual Asset, portion of the Assets, or all Assets constituting their respective Collateral (as defined in the DIP Order) in conjunction with any sale of the Debtor's assets (the "**_Credit Bid_**"). Subject to disclosure by the Agent and reconsideration by the Court at the Sale Hearing, upon exercise of a Credit Bid, the Agent shall not be required to take title to or ownership of, or have any obligation in connection with (in

each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and the Agent shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid. The Agent will not be a Backup Bidder unless the Agent consents in writing otherwise; provided that, if the Agent bids cash in excess of the full amount of the Lenders' prepetition claims and all obligations under the DIP Order and/or the DIP Loan Documents (such excess cash component, the "Excess Cash Component"), then it may be deemed a Back-up Bidder, and the Agent shall deposit an amount equal to 10% of the Excess Cash Component as a Good Faith Deposit.

15.    Subject to the prior paragraph, the Stalking Horse Bidder, if any, shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to section 363(k) of the Bankruptcy Code.

16.    In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids.

17.    The Debtor may (a) determine which Qualified Bid (including the Credit Bid) is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any Bid (other than the Credit Bid) that, in the discretion of the Debtor, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; (c) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders as the Debtor determines to be in the best interest of the Debtor's estate; and (d) prior to

the entry of the Sale Order, may re-open the Auction to consider further Bids, in its reasonable business judgment.

18.    No person or entity, other than the Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III.    Assumption and Assignment Notices & Procedures

19.    No later than seven (7) days after the entry of this Order, the Debtor shall serve on all non-Debtor counterparties (each a "*Contract Counterparty*" and, together, the "*Contract Counterparties*") to any Contract (the "*Cure and Possible Assumption and Assignment Notice Parties*") that may be assumed by the Debtor and assigned to the Successful Bidder, which notice shall be substantially similar to the form attached hereto as **Exhibit 3** (a "*Cure and Possible Assumption and Assignment Notice*"): (a) setting forth the Debtor's calculation of the cure amount, if any, that would be due and owing to such Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease; (b) alerting such Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder; (c) explaining that a Cure and Possible Assumption and Assignment Notice Party may request that the subsequent Assumption Notice (as defined below) be served on such Cure and Possible Assumption and Assignment Notice Party via email or facsimile by making such request to the Debtor's counsel, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), on or before June 13, 2017 at 4:00 p.m. (prevailing Eastern Time); and (d) providing that that any

Contract Assumption Objection (as defined below) must be filed with the Court and served pursuant to Paragraph 22 below on or before the Contract Assumption Objection Deadline.

20.     The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

21.     No later than two (2) business days after the Bid Deadline, the Debtor shall file with the Court and serve, via overnight mail, on the Cure and Possible Assumption and Assignment Notice Parties who are parties to a Contract to be assumed and assigned a further notice substantially similar to the form attached hereto as **Exhibit 4** (the "*Assumption Notice*") identifying (a) all Qualified Bidders, each of whom will be permitted to participate in the Auction, and (b) with respect to each such Qualified Bidder, each of the Contracts that each such Qualified Bidder proposes to assume, and providing such parties with the Qualified Bidders' assurance of future performance.

22.     Any Contract Counterparty that objects to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of their executory contract or unexpired lease must file an objection with the Bankruptcy Court (a "*Contract Assumption Objection*") on or before 4:00 p.m. (prevailing Eastern Time) on June 19, 2017 (the "*Contract Assumption Objection Deadline*"), which Contract Assumption Objection must also be served on (a) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington,

Delaware 19801, Attn.: Christopher A. Ward (cward@polsinelli.com), (b) counsel to the Agent, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067, Attn: Gregory A. Bray (gbray@milbank.com) and Haig M. Maghakian (hmaghakian@milbank.com), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn.: Mark D. Collins (collins@rlf.com), and (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).

23.    If a Contract Counterparty does not timely file and serve a Contract Assumption Objection, that party will be forever barred from objecting to (a) the Debtor's proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder.  Where a Contract Counterparty to an Assigned Contract files a timely Contract Assumption Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtor's ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

## IV.    Notice of the Sale Process

24.    The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in a form substantially similar to the forms as annexed to this Order as **Exhibit 2**, **Exhibit 3**, and **Exhibit 4**, respectively, and the Creditor Notice and Bidding Procedures Notice, in a form substantially similar to the forms as annexed to the Motion as **Exhibit C** and **Exhibit D**, respectively, are hereby approved.

AM 66044053. 6

58241305.5

25.    Within seven (7) days after the entry of this Order, the Debtor (or its agents) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b) counsel to the Agent to the Debtor's prepetition and postpetition Lenders; (c) the Contract Counterparties; (d) all parties who have expressed a written interest in the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) the California Franchise Tax Board; (h) all other applicable state and local taxing authorities; (i) all the Debtor's other creditors; (j) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

26.    In addition, the Debtor are authorized to publish Bidding Procedures Notice in *The USA Today (National Edition)* and *Modern Healthcare Magazine* within fourteen (14) days after entry of this Order.

27.    Within seven (7) days after entry of this Order, the Debtor (or its agents) shall serve the Creditor Notice on all of the parties set forth on the Debtor's creditor matrix who were not served with the Sale Notice.

**V.    The Sale Hearing**

28.    The Sale Hearing will be conducted on June 23, 2017 at 10:00 a.m. (prevailing Eastern Time).   The Debtor will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtor is authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

## VI.    Objections to the Sale

29.    Objections, if any, to the relief requested in the Motion relating to the Asset Sale (except for any objection that arises at the Auction) must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern Time) on June 19, 2017 (the "*Sale Objection Deadline*"); and (b) be served so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on June 19, 2017 by (i) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn.: Christopher A. Ward (cward@polsinelli.com), and (ii) counsel to the Agent, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067, Attn: Gregory A. Bray (gbray@milbank.com) and Haig M. Maghakian (hmaghakian@milbank.com), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com), and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).   A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation such assumption and assignment.

## VII.    Other Relief Granted

30.     Nothing in this Order, the Stalking Horse Agreement (if any) or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

31.     Notwithstanding anything to the contrary in the Motion, the Bidding Procedures, or this Order, the right of the Agent, on behalf of itself and each of the Lenders, to object to any proposed sale of any Assets that is not acceptable to the Lenders and the rights and defenses of the Agent with respect to the form and substance of the Sale Order are hereby reserved.

32.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     The Debtor is hereby authorized to conduct the Asset Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

34.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

35.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules to the contrary, and the Debtor may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

36.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____ ___, 2017    _____

IN THE UNITED STATES BANKRUPTCY
JUDGE

<u>**Exhibit 1 to Bidding Procedures Order**</u>

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CALIFORNIA PROTON TREATMENT CENTER, LLC,[1] | Case No. 17-10477-LSS |
| Debtor. | Hon. Laurie Selber Silverstein |
| | **Re: Docket No. ____** |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "***Bidding Procedures***")[2] to be employed with respect to the proposed sale (the "***Sale***") of substantially all of the assets and operations of the above-captioned debtor as debtor in possession (the "***Debtor***").  It is contemplated that the sale will be implemented through a purchase agreement, subject to the receipt of higher and better bids at an auction (the "***Auction***") and the corresponding entry into a sale agreement with a Successful Bidder (as defined below) according to these Bidding Procedures.

## I.    Important Dates

- (All times are prevailing Eastern Time)

- **April 19, 2017 at 4:00 p.m.:**  Debtor to send (1) the Sale Notice and the Creditor Notice and (2) the Cure and Possible Assumption and Assignment Notices to All Contract Counterparties

- **April 26, 2017:** Debtor to publish the Bidding Procedures Notice in *USA Today (National Edition)* and *Modern Healthcare Magazine*

- **May 29, 2017:**  Deadline for Debtor to filing a notice awarding the Bid Protections to a Stalking Horse Bidder, after which written notice must be given to the U.S. Trustee and a motion filed with the Court if the U.S. Trustee objects to awarding the Bid Protections

- **June 12, 2017 at 4:00 p.m.:** Deadline to submit Bid to be considered for the Auction

- **June 13, 2017 at 4:00 p.m.:** Deadline for Cure and Possible Assumption and Assignment Notice Parties to request email or facsimile service of Assumption Notices

- **June 14, 2017 at 4:00 p.m.:** Debtor to send Assumption Notices

---

[1]   The last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business is 9730 Summers Ridge Road, San Diego, California 92121, Attn: Wilson Williams, Manager.

[2]   Capitalized terms used as defined terms herein but not otherwise defined have the meanings ascribed to them in the Bidding Procedures Order.

- **June 15, 2017 at 10:00 a.m.:** Proposed date of Auction

- **June 19, 2017 at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any objection that arises at the Auction)

- **June 19, 2017 at 4:00 p.m.:** Contract Assumption Objection Deadline

- **June 23, 2017 at 10:00 a.m.:** Proposed date of Sale Hearing

## II.    Approval of Bidding Procedures

On April 12, 2017, the Bankruptcy Court entered an order approving these bidding procedures (these "***Bidding Procedures***" and such order, the "***Bidding Procedures Order***"), in furtherance of the Sale.  The Bankruptcy Court has jurisdiction with respect to any dispute that may arise with respect to these Bidding Procedures.  These Bidding Procedures set forth the process (the "***Bidding Process***") by which the Debtor is authorized to conduct the Auction for the Sale of its Assets.

## III.    Marketing Process

### A.    Contact Parties

The Debtor, in consultation with Cain Brothers & Company, LLC ("***Cain***") its other advisors developed a list of parties who the Debtor believes may potentially be interested in and who the Debtor reasonably believes would have the financial resources to consummate a Sale, which list includes both potential strategic investors and liquidators (each, individually, a "***Contact Party***", and collectively, the "***Contact Parties***").  The Debtor shall consult with the Agent (but only if the Agent, on behalf of the Lenders, has delivered a written notice to the Debtor that it will not be submitting a Bid, including a Credit Bid (both as defined herein) on the Assets or, if any such Bid has been submitted, the Agent has delivered a written notice to the Debtor that it has withdrawn such Bid) on all aspects of the asset sale process (the "***Consultation Parties***").  Cain have or will contact the Contact Parties to explore their interest in pursuing a Sale.  The Contact Parties may include parties whom the Debtor or its advisors have previously contacted regarding a Sale, regardless of whether such parties expressed any interest, at such time, in pursuing a Sale.  The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtor may distribute to each Contact Party an "***Information Package***," which is comprised of:

(a)    a cover letter;

(b)    a copy of these Bidding Procedures; and

(c)    a copy of the confidentiality agreement attached hereto as **<u>Attachment A</u>** (the "***Confidentiality Agreement***").

### B.    Access to Diligence Materials

To participate in the Bidding Process and to receive access to any materials relating to the Assets (the "***Diligence Materials***"), a party must submit to the Debtor an executed Confidentiality Agreement (it being understood that any person or entity that previously signed a confidentiality agreement in a form satisfactory to the Debtor shall not be required to execute a new confidentiality agreement).  The executed Confidentiality Agreement must be signed and transmitted by the person or entity wishing to have access to the Debtor's data room (the "***Data Room***") and any other Diligence Materials.

A party who qualifies for access to the Diligence Materials shall be a "***Preliminarily Interested Investor***."  All due diligence requests must be directed to Cain.

For any Preliminary Interested Investor who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold any Diligence Materials that the Debtor determines are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

### C.    Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "***Bid***"), and each party submitting such a Bid (each, a "***Bidder***"), must be determined by the Debtor, to satisfy each of the following conditions:

(1)    **Good Faith Deposit:** Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the Bid's proposed purchase price to an interest bearing escrow account to be identified and established by the Debtor (the "***Good Faith Deposit***").

(2)    **Terms:** A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale, including an assets purchase agreement (the "***Transaction Documents***").  A Bid should propose a transaction involving substantially all, or a portion of, the Debtor's Assets or operations.  The Debtor shall evaluate all Bids to determine whether such Bid(s) maximizes the value of the Debtor's estate as a whole.  The Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtor that the Bidder wishes to have assumed and assigned to it pursuant to the Sale (collectively, the "***Assigned Contracts***").  The Debtor will consider proposals for less than substantially all of the Debtor's assets or operations.  A Bid to purchase only certain assets of the Debtor shall propose a purchase price determined by such Bidder but shall be reviewed by the Debtor to determine if it is acceptable in consultation with the Consultation Parties.

(3)    **Corporate Authority:** Written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed transaction; *provided, however*, that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor, in consultation with the

Consultation Parties, of the approval of the transaction by the equity holder(s) of such Bidder.

(4) **Proof of Financial Ability to Perform:** Written evidence that the Debtor, in consultation with the Consultation Parties, reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such transaction.  Such information should include, *inter alia*, the following:

    (a)    contact names and numbers for verification of financing sources,

    (b)    evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

    (c)    the Bidder's current financial statements (audited if they exist); and

    (d)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the transaction; *provided, however*, that the Debtor shall determine, in its reasonable discretion, in consultation with the Debtor's advisors and the Consultation Parties, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(5) **Contingencies:** A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(6) **Irrevocable:** A Bid must be irrevocable through the Auction; *provided, however*, that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined herein), such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(7) **Disclaimer of Fees.**  Each Bid (other than a Stalking Horse Bid, if any) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, *except* as the Debtor may agree with a Stalking Horse Bidder pursuant to the Bidding Procedures Order.  By submitting its Bid, each bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including pursuant to section 503(b) of the Bankruptcy Code.

(8)    **Bid Deadline:** Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtor must receive a Bid in writing, on or before June 12, 2017 at 4:00 p.m. (prevailing Eastern Time) or such later date as may be agreed to by the Debtor (the "***Bid Deadline***").  Bids must be sent to the following by the Bid Deadline to be considered: counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware  19801, Attn: Christopher A. Ward (cward@polsinelli.com); investment banker for the Debtor, Cain Brothers & Company, LLC, 601 California Street, Suite 1505, San Francisco, California 94108, Attn: James Moloney (jmoloney@cainbrothers.com).

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "***Qualified Bid***," and such Bidder shall constitute a "***Qualified Bidder***."

### D.    Credit Bid

The Agent shall be deemed to be a Qualified Bidder and, except as provided in the proviso at the end of this paragraph, is not required to make any Good Faith Deposit.  The Agent may participate in the Auction and may credit bid at any time up to the conclusion of the Auction, in its sole and absolute discretion, any portion and up to the entire amount of the Agent's and the Lenders' respective claims, including, without limitation, both the Lenders' prepetition claims and all obligations under the DIP Order, at any time on any individual Asset, portion of the Assets, or all Assets constituting their respective Collateral (as defined in the DIP Order) in conjunction with any sale of the Debtor's assets (the "***Credit Bid***").  Subject to disclosure by the Agent and reconsideration by the Court at the Sale Hearing, upon exercise of a Credit Bid, the Agent shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and the Agent shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid.  The Agent will not be a Backup Bidder unless the Agent consents in writing otherwise; provided that, if the Agent bids cash in excess of the full amount of the Lenders' prepetition claims and all obligations under the DIP Order and/or the DIP Loan Documents (such excess cash component, the "Excess Cash Component"), then it may be deemed a Back-up Bidder, and the Agent shall deposit an amount equal to 10% of the Excess Cash Component as a Good Faith Deposit.

## IV.    Auction

If one or more Qualified Bids is received by the Bid Deadline (other than the Credit Bid), the Debtor will conduct the Auction to determine the highest and best Qualified Bid.  This determination shall take into account any factors the Debtor, upon consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified

Bidder to close the proposed Transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the Transaction on any actual or potential litigation; and (g) the net after-tax consideration to be received by the Debtor's estate (collectively, the "***Bid Assessment Criteria***"). If no Qualified Bid (other than the Credit Bid) is received by the Bid Deadline, the Debtor may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on June 15, 2017, at the offices of Debtor's Delaware counsel, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 or such later time on such day or other place as the Debtor shall notify all creditors and all Qualified Bidders. The Auction shall be transcribed or videotaped, and shall be conducted according to the following procedures:

### A.     The Debtor Shall Conduct the Auction.

The Debtor and its professionals shall direct and preside over the Auction in consultation with the Consultation Parties. Only Qualified Bidders, or their representatives or agents, may submit Bids or Overbids (as defined below) at the Auction. At the start of the Auction the Debtor shall describe the terms of the highest and best Qualified Bid(s) received (the "***Auction Baseline Bid***"). The Debtor's assets will be auctioned both in lots and for all of the assets in bulk at the Auction to determine the highest and best Bid(s).

All Bids made thereafter shall be Overbids, and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

### B.     Terms of Overbids.

An "***Overbid***" is any Bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

### (1)     Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments of at least **$100,000** (the "***Minimum Overbid Increment***") for a bid for all of the Debtor's Assets, and in an amount to be determined by the Debtor, in consultation with the Consultation Parties at the Auction, for lots; *provided* that the Debtor shall retain the right to modify the bid increment requirements at the Auction in consultation with the Consultation Parties. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt or marketable securities, or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim of the Debtor's prepetition and postpetition secured lenders (the "***Lenders***"), in any combination.

(2)     **Remaining Terms are the Same as for Qualified Bids.**

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtor, in consultation with the Consultation Parties, accepts a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the Consultation Parties), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in consultation with the Consultation Parties) demonstrating such Bidder's ability to close the transaction proposed by such Overbid.

(3)     **Announcing Overbids.**

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtor's estate based on, *inter alia,* the Bid Assessment Criteria.

(4)     **Consideration of Overbids.**

The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment and in consultation with the Consultation Parties, may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

C.     **No Collusion; Good-Faith *Bona Fide* Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the Sale or bidding (including that it has no agreement with any other Bidder or Qualified Bidder to control the price) and (ii) it's Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

D.     **Backup Bidder.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid(s) at the Auction, as determined by the Debtor, in the exercise of its business judgment, shall be required to serve as a backup bidder (the "***Backup Bidder***").  The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "***Backup Bid***") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is twenty five (25) days after the date of the Sale Hearing (the "***Outside Backup Date***")

or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtor's estates, and the Debtor specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty five (25) days after the date that the Debtor provides notice to the Backup Bidder that the Successful Bidder failed to consummate a sale and that the Debtor desires to consummate the transaction with the Backup Bidder or five (5) calendar days after necessary regulatory approvals are completed by the Backup Bidder and/or the Debtor. The deposit, if any, of the Backup Bidder shall be held by the Debtor until the earlier of two (2) business days after (a) the closing of the Sale with the Successful Bidder and (b) the Outside Backup Date; *provided*, *however*, that in the event the Successful Bidder does not consummate the transaction as described above and the Debtor provides notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event that the Debtor fails to consummate a transaction with the backup Bidder as described above, the Backup Bidder's deposit shall be forfeited to the Debtor's estate, and the Debtor specifically reserves the right to seek all available damages from the defaulting Backup Bidder.

### E.    Additional Procedures.

The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

### F.    Consent to Jurisdiction as Condition to Bidding.

All Qualified Bidders, and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Transaction Documents.

### G.    Rights of the Agent/Other Rights to Credit Bid

The Agent shall have the right to Credit Bid as set forth in the Bidding Procedures Order. If there is a Stalking Horse Bidder, the Stalking Horse Bidder shall have the right (including as part of any Overbid) to credit bid all or a portion of the value of its Bid Protections (if any) for the assets pursuant to section 363(k) of the Bankruptcy Code.

### H.    Closing the Auction

The Auction shall continue until there is only one or more Qualified Bid(s) that the Debtor determines in its reasonable business judgment, after consultation with its financial and legal advisors and the Consultation Parties, is the highest and best Qualified Bid(s) at the Auction (the "***Successful Bid***" and the Bidder submitting such Successful Bid, the "***Successful Bidder***").

In making this decision, the Debtor, in consultation with its financial and legal advisors and the Consultation Parties, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid(s).

  I.  **Break-Up Fee and Expense Reimbursement.**

    If the Debtor enters into a Stalking Horse Agreement and the Stalking Horse Bidder attends the Auction with its Bid in place, and the Stalking Horse Purchaser is outbid, and the Successful Bidder is a party other than Stalking Horse Bidder, the Stalking Horse Bidder shall, subject to the terms of Paragraphs 4 through 9 of the Bidding Procedures Order and further court order, be entitled to receive, to the extent set forth in the Stalking Horse Agreement: (i) a break-up fee (the "***Break-Up Fee***") not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement; and (ii) the reimbursement of the reasonable, actual, out-of-pocket costs and expenses paid or incurred by Stalking Horse Bidder directly incident to, under, or in connection with the negotiation, execution and performance under the Stalking Horse Agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors, excluding any charges for the time or services of the Stalking Horse Bidder's employees) in an amount not to exceed $250,000 in the aggregate (the "***Expense Reimbursement***"). The Break-Up Fee and Expense Reimbursement, if any, shall be paid immediately upon consummation of the Sale transaction out of the proceeds of the Sale and shall have priority as an administrative expense in the Debtor's case under Sections 503(b)(6) and 507(a) of the Bankruptcy Code.

**V.  Procedures for Determining Cure Amounts and Adequate Assurance for Contract Counterparties to Assigned Contracts.**

    No later than April 19, 2017, the Debtor shall send a notice, (the "***Cure and Possible Assumption and Assignment Notice***"), a copy of which is attached to the Bidding Procedures Order as **Exhibit 3**), to each counterparty to an executory contract or unexpired lease (each a "***Contract Counterparty***") setting forth (a) the Debtor's calculation of the cure amount, if any, that would be owing to such Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, (b) alerting such Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder, (c) explaining that such Contract Counterparty may request that the subsequent Assumption Notice (as defined below) be served on such Contract Counterparty via email or facsimile by making such request to the Debtor's counsel, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), on or before June 13, 2017 at 4:00 p.m. (prevailing Eastern Time); and (d) providing that that any Contract Assumption Objection (as defined below) must be filed with the Court and served pursuant to Paragraph 19 of the Bidding Procedures Order (described in the following paragraph) on or before the Contract Assumption Objection Deadline.

    No later than June 14, 2017, the Debtor shall file with the Court and serve, via overnight mail, on the Cure and Possible Assumption and Assignment Notice Parties who are parties to a

Contract to be assumed and assigned a further notice substantially in the form attached to the Bidding Procedures Order as **Exhibit 4** (the "*Assumption Notice*") identifying (a) all Qualified Bidders, each of whom will be permitted to participate in the Auction, and (b) with respect to each such Qualified Bidder, each of the Contracts that each such Qualified Bidder proposes to assume, and providing such parties with the Qualified Bidders' assurance of future performance.

Any Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their executory contract or unexpired lease must file an objection (a "*Contract Assumption Objection*") on or before 4:00 p.m. prevailing Eastern Time on June 19, 2017 (the "*Contract Assumption Objection Deadline*"), which Contract Assumption Objection must be served on (a) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn.: Christopher A. Ward (cward@polsinelli.com), (b) counsel to the Agent, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067, Attn: Gregory A. Bray (gbray@milbank.com) and Haig M. Maghakian (hmaghakian@milbank.com), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn.: Mark D. Collins (collins@rlf.com), and (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov), so that it is actually received no later than 4:00 p.m. prevailing Eastern Time on the Contract Assumption Objection Deadline. If a Contract Counterparty does not timely file and serve a Contract Assumption Objection, that party will be forever barred from objecting to (a) the Debtor's proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder. Where a Contract Counterparty to an Assigned Contract files a timely Contract Assumption Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtor's ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

## VI.    Sale Hearing

The Bankruptcy Court has scheduled a hearing (the "*Sale Hearing*") on June 23, 2017, at 10:00 a.m. (prevailing Eastern Time), at which hearing the Debtor will seek approval of the Sale with the Successful Bidder. Objections to the sale of the Assets to the Successful Bidder or Back-Up Bidder must be filed and served so that they are actually received by the Debtor no later than 4:00 p.m. (prevailing Eastern Time) on June 19, 2017 (except for any objection that arises at the Auction) on the following: counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com).

## VII.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court.   The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing.   The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) two (2) business days after the Acquired Assets have been sold pursuant to the closing of a sale approved by the Bankruptcy Court and (ii) twenty (20) days after conclusion of the Sale Hearing.   Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.   If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## VIII.    Reservation of Rights

The Debtor reserves its rights, in its reasonable business judgment in a manner consistent with its fiduciary duties that will best promote the goals of the bidding process, to modify these Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadline set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) reopening the Auction to consider further Bids or Overbids; (d) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent overbids, whether a non-conforming Bid constitutes a Qualified Bid); (e) canceling the Auction; and (f) rejecting any or all Bids or Qualified Bids; *provided, however*, that nothing herein modifies, nor shall be deemed consent by the Agent or any Lenders to a modification of, the 363 Sale Milestones set forth in the DIP Term Sheet or any other term, condition, provision, or milestone set forth in the DIP Order or the DIP Loan Documents.

Notwithstanding the foregoing and subject in all respects to the Stalking Horse Agreement, if any, the Debtor may not impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Agreement or the Stalking Horse Bidder's right to credit bid the Bid Protections as part of any Bid at the Auction.

Notwithstanding anything to the contrary in the Motion, these Bidding Procedures, or the Bidding Procedures Order, the right of the Agent, on behalf of itself and each of the Lenders, to object to any proposed sale of any Assets if the sale proceeds are not sufficient to satisfy the Agent's prepetition or postpetition Liens on such Assets and the rights and defenses of the Agent with respect to the form and substance of the Sale Order are hereby reserved.

**Attachment A to Bidding Procedures**

**Form of Confidentiality Agreement**

[Date]

[POTENTIAL PURCHASER]

To Whom It May Concern:

1.      **Possible Transaction.**   You have requested or may request certain information which is non-public, confidential or proprietary in nature from California Proton Treatment Center LLC, having its principal offices at 9730 Summers Ridge Road, San Diego, California 92121 (the "***Company***") in order to assist in your evaluation of a possible transaction with the Company involving the purchase of certain assets of the Company (a "***Possible Transaction***").  Subject to your delivery of a signed copy of this letter agreement (this "***Confidentiality Agreement***"), the Company or its representatives will deliver or make available to you, upon the terms and subject to the conditions set forth in this Confidentiality Agreement, certain information about the assets.

2.      **Evaluation Material.**   All information about the Company or the Possible Transaction furnished or made available by the Company, its managing members, officers, employees, agents, consultants, financers, investors or advisers (legal, financial, accounting or otherwise) (such persons collectively referred to herein as "***Representatives***"), including, without limitation any third-party reports or materials that are subject to a confidentiality agreement between Company or any of its affiliates and a third party, whether furnished before or after the date hereof, whether tangible or intangible and in whatever form or medium provided, whether written or orally furnished or made available, together with all notes, analysis, compilations, studies, summaries, data, interpretations, documents and other materials which contain, reflect or are generated or otherwise derived from such information, are referred to in this Confidentiality Agreement as "***Evaluation Material***".  Evaluation Material does not include, however, information which: (a) is or becomes generally available to the public other than as a result of a disclosure by you or your Representatives; (b) is or becomes available to you on a nonconfidential basis from a source (other than the Company or its Representatives) not known by you to be prohibited from disclosing such information to you by a legal, contractual or fiduciary obligation, provided that such latter information shall become Evaluation Material at such time as you or your Representatives become aware that the source of such Evaluation Material was prohibited from disclosing the same to you or your Representatives; or (c) you have the Company's prior written consent to disclose to the identified recipient thereof.  As used in this Confidentiality Agreement, the term "person" shall be broadly interpreted to include, without limitation, the media and any companies, partnership, group, limited liability companies, trust, other entity or individual.

3.      **Confidentiality Undertaking.**   You agree: (a) except as required by law (including legal or judicial process), the requirements or procedures of any regulatory or government authority or of any recognized securities exchange or listing authority and subject to the provisions of paragraph 5 below, to keep all Evaluation Material strictly confidential and not to disclose or reveal any Evaluation Material to any person other than to those of your Representatives with a need to know the information contained therein for the sole purpose of assisting you in the evaluation, analysis, negotiation, development or consummation of a Possible Transaction and to ensure that those persons are aware of the confidential nature of the Evaluation Material and of the terms of this Confidentiality Agreement; provided, that such Representatives shall have been provided with a copy of this Confidentiality Agreement; and provided, further, that you shall not  use Evaluation Material

for any purpose other than solely in connection with the evaluation, analysis, negotiation, development or consummation of a Possible Transaction. You agree to take all reasonable measures to restrain your Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

4. **Use.** You shall use the Evaluation Material only for the purpose of the Possible Transaction, or the evaluation thereof. No other rights or licenses to trademarks, inventions, copyrights, patents, or any other intellectual property are implied or granted under this Confidentiality Agreement or by the conveying or disclosure of the Evaluation Material. All Evaluation Material, unless otherwise specified in writing, shall be and remain the property of the Company; *provided, however*, that in the event a Possible Transaction is consummated with you, all Evaluation Material shall become yours. The Evaluation Material supplied to you shall not be reproduced in any form except as required to accomplish the intent of this Confidentiality Agreement.

5. **Notice of Required Disclosure.** In the event that you or any of your Representatives are required (by deposition, interrogatories, requests for information or documents in legal or regulatory proceedings, by regulatory or governmental authorities, subpoena, civil investigative demand, regulatory process, compliance with listing or securities exchange laws or other similar process or applicable law) to disclose all or any part of the Evaluation Material or the information contained therein, you shall provide the Company with prompt written notice of the existence, terms and circumstances surrounding any such request or requirement so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Confidentiality Agreement (and if the Company seeks such an order, to provide such cooperation as the Company shall reasonably request at the Company's expense). If, in the absence of a protective order or other remedy or the receipt of a waiver by the Company, you or any of your Representatives are nonetheless, in the reasonable opinion of your counsel, legally compelled to disclose Evaluation Material to any such tribunal, you or your Representatives may, without liability hereunder (unless such disclosure was caused by or resulted from a previous disclosure by you or any of your Representatives that was not permitted by this Confidentiality Agreement), disclose to such tribunal only that portion of the Evaluation Material which such counsel reasonably advises you is legally required to be disclosed, provided that you exercise your reasonable efforts to preserve the confidentiality of the Evaluation Material in making such disclosure, including without limitation, by using reasonable attempts to obtain assurance that confidential treatment will be accorded the Evaluation Material by such tribunal.

6. **Return or Destruction of Evaluation Material.** At any time upon the Company's request, you will, at the election of the Company, promptly (and in any case within 7 days of any such request) deliver to the Company or destroy all of the Evaluation Material without retaining any copy thereof and cause any remaining notes, photocopies and other materials derived from the Evaluation material to be destroyed, and provide to the Company a written certification of an authorized executive officer as to such return and/or destruction. Notwithstanding the foregoing, any Evaluation Material prepared by you and incorporated into your corporate governance documents may be kept for corporate archive purposes only, provided that all such information shall continue to be kept confidential pursuant to the terms of this Confidentiality Agreement. Your return, destruction or retention of any such Evaluation Material will not affect any of your other obligations

under this Confidentiality Agreement, including, but not limited to, your obligations under paragraph 3 above.

7. **No Representations or Liability.**    Neither the Company nor any of its Representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material.  Neither the Company nor any of its Representatives shall have any liability to you or to any of your Representatives, affiliates or stockholders on any basis (including, without limitation, in contract, tort, under federal or state securities laws or otherwise), and neither you nor your Representatives will make any claims whatsoever against the Company or its Representatives, with respect to or arising out of or relating to: (a) the Possible Transaction involving the parties, as a result of this Confidentiality Agreement; (b) the participation of such party and its Representatives in evaluating the Possible Transaction involving the parties; (c) the review of or use or content of the Evaluation Material or any errors therein or omissions therefrom; or (d) any action taken or any inaction occurring in reliance on the Evaluation Material.  The Company will have the exclusive authority to determine what (if any) Evaluation Material is to be made available to you and your Representatives.

8. **No Solicitations for Employment.**    Except as may be contemplated or required in the consummation of a Possible transaction, for a period of two years following the date hereof, you and your controlled affiliates will not, directly or indirectly, solicit for employment or hire any officer of the Company or any of its subsidiaries or divisions with whom you have had contact or who became known to you in connection with your consideration of the Possible Transaction, except that you and your affiliates shall not be precluded from hiring any such employee who: (a) initiates discussions regarding such employment without any direct or indirect solicitation by you, any of your controlled affiliates or your Representatives; or (b) responds to any public advertisement or general solicitation placed or made by you; or (c) has been terminated by the Company or their subsidiaries prior to commencement of employment discussions between you and such officer.

9. **Remedies.**    You agree that money damages would not be a sufficient remedy for any breach of this Confidentiality Agreement by you or your Representatives, that in addition to all other remedies the Company shall be entitled to specific performance and injunctive and other equitable relief as a remedy for any such breach, that such remedy shall not be deemed to be the exclusive remedy for breach of this Confidentiality Agreement but shall be in addition to all other remedies available at law or equity, and you further agree to waive, and to use your best efforts to cause your Representatives to waive, any requirement for the securing or posting of any bond in connection with such remedy.  Notwithstanding anything appearing to the contrary in this Confidentiality Agreement, no direct or indirect partner, member or shareholder of either party hereto (or any officer, director, agent, member, manager, personal representative, trustee or employee of any such direct or indirect partner, member or shareholder) shall be personally liable for the performance of such party's obligations under this Confidentiality Agreement.

10. **Miscellaneous.**    Except as may be provided in that certain Letter Agreement to which this Confidentiality Agreement is attached:

(a)    neither the Company nor you shall have any obligation to negotiate or enter into a definitive agreement in relation to the Possible Transaction as a result of this Confidentiality Agreement.

(b)     The Company reserves the right, in their sole and absolute discretion: (i) to conduct any process they deem appropriate with respect to any Possible Transaction or any other proposed transaction involving the Company, and to modify any procedures relating to any such process without giving notice to you or any other person; (ii) to reject any proposal made by you or any of your affiliates or Representatives with respect to a transaction involving the Company; and (iii) to terminate discussion and negotiations with respect to the Possible Transaction with you at any time.

(c)     You recognize that, except as may be expressly provided in any definitive agreement between you or any of your affiliates and the Company: (x) the Company and their affiliates and Representatives will be free to negotiate with, and to enter into any agreement or transaction with, any other person; and (y) you will not have any rights or claims against the Company or any of its Representatives arising out of or relating to any Possible Transaction or other transaction involving the Company.  Any decision to proceed with negotiations or to consummate an agreement pertaining to the Possible Transaction shall be in each party's sole discretion and this Confidentiality Agreement creates no obligation on any party with respect thereto.  Each party shall bear its own costs and expenses in connection with the activities contemplated by this Confidentiality Agreement.

(d)     No failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof, or the exercise of any right, power or privilege hereunder.

(e)     This Confidentiality Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its principles or rules regarding conflicts of laws.  EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS CONFIDENTIALITY AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS LETTER AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(f)     Notwithstanding anything to the contrary contained herein, your obligations with respect to Evaluation Material disclosed pursuant to this Confidentiality Agreement shall (unless extended by mutual agreement) expire or terminate upon the earlier of: (i) three (3) years after the date of this Confidentiality Agreement or (ii) the consummation with of a Possible Transaction with you.

(g)     The provisions of this Confidentiality Agreement are severable and, if any provisions are determined to be void or unenforceable in whole or in part, the remaining provisions shall be binding and enforceable.

(h)     This Confidentiality Agreement may not be amended except in writing and signed by an authorized representative of each party, and this Confidentiality Agreement shall be

binding upon all employees, agents, subcontractors, subsidiaries, and affiliates of each party as provided herein.

(i)     The provisions of this Confidentiality Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns.  All modifications of, waivers of and amendments to this Confidentiality Agreement must be in writing and signed on behalf of you and the Company.

(j)     This Confidentiality Agreement expresses the entire agreement of the parties with respect to its subject matter.  All prior or contemporaneous agreements or negotiations, written or oral, are hereby superseded.

Please confirm your agreement with the foregoing by signing where indicated below and returning a copy of this Confidentiality Agreement.

CALIFORNIA PROTON TREATMENT CENTER LLC

By:     _____

Name:  _____

Title:   _____

Accepted and Agreed as of the date first written above:

[POTENTIAL PURCHASER]

By:     _____

Name:  _____

Title:   _____

**<u>Exhibit 2 to Bidding Procedures Order</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CALIFORNIA PROTON TREATMENT CENTER, LLC,[1] | Case No. 17-10477-LSS |
| Debtor. | Hon. Laurie Selber Silverstein |
| | **Re: Docket No. ____** |

## NOTICE OF BID PROCEDURES,
## AUCTION, HEARING AND DEADLINES RELATING
## TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS

**PLEASE TAKE NOTICE** that on _____ ___, 2017,, California Proton Treatment Center LLC, as a debtor and debtor in possession (the "***Debtor***") in the above-captioned case (the "***Bankruptcy Case***"), filed a *Motion of the Debtor for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor' Assets, (B) Approving the Form and Manner of Notice thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Successful Bidder, and (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* [Docket No. ___] (the "***Bidding Procedures and Sale Motion***").[2]  The Debtor seeks to complete a sale (the "***Transaction***") of substantially all its assets (the "***Transferred Assets***") to a prevailing bidder or bidders (the "***Successful Bidder***") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of the Bankruptcy Code (the "***Auction***").

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2017 the Bankruptcy Court entered an order [Docket No. ____] (the "***Bidding Procedures Order***") approving the bidding procedures set forth in the Bidding Procedures and Sale Motion (the "***Bidding Procedures***"), which set the key dates and times related to the sale of the Debtor's Transferred Assets under the asset purchase agreement with the Successful Bidder.  **All interested bidders should carefully read the Bidding Procedures**.  To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bidding Procedures shall control.

---

[1] The last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business is 9730 Summers Ridge Road, San Diego, California 92121, Attn: Wilson Williams, Manager.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding Procedures and Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures, the Debtor must receive a Qualified Bid from interested bidders in writing, on or before [_____, **2017] at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtor (the "*Bid Deadline*").  To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (i) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@lockelord.com); and (ii) investment bankers for the Debtor, Cain Brothers & Company, LLC, 601 California Street, Suite 1505, San Francisco, California 94108, Attn: James Moloney (jmoloney@cainbrothers.com).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, if the Debtor receives one or more Qualified Bids (other than the Credit Bid) by the Bid Deadline, the Auction will be conducted on [_____] at [_____] a.m./p.m. (prevailing Eastern Time) at Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, or at such other place, date and time as may be designated by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, the Debtor has designated certain Assigned Contracts that may be assumed or assumed and assigned to the Successful Bidder.  No later than _____, 2017, the Debtor shall send a notice to each counterparty to an Assigned Contract setting forth (a) the Debtor's calculation of the cure amount, if any, that would be owing to such counterparty if the Debtor decided to assume or assume and assign such Assigned Contract, (b) alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder, (c) explaining that such counterparty may request that the subsequent Assumption Notice (as defined below) be served on such counterparty via email or facsimile by making such request to the Debtor's counsel, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), on or before June 13, 2017 at 4:00 p.m. (prevailing Eastern Time); and (d) providing that that any Contract Assumption Objection (as defined below) must be filed with the Court and served pursuant to Paragraph 19 of the Bidding Procedures Order (described below) on or before the Contract Assumption Objection Deadline (the "*Cure and Possible Assumption and Assignment Notice*").

**PLEASE TAKE FURTHER NOTICE** that no later than _____, 2017, the Debtor shall file with the Court and serve, via overnight mail, on the Cure and Possible Assumption and Assignment Notice Parties who are parties to a Contract to be assumed and assigned a further notice (the "*Assumption Notice*") identifying (a) all Qualified Bidders, each of whom will be permitted to participate in the Auction, and (b) with respect to each such Qualified Bidder, each of the Contracts that each such Qualified Bidder proposes to assume, and providing such parties with the Qualified Bidders' assurance of future performance.  Any Contract that a Qualified Bidder elects to assume subsequent to service of the Assumption Notice will be handled under a different procedure and will not be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their Assigned Contract(s) must

file with the Bankruptcy Court and serve an objection (a "***Cure or Assignment Objection***") so that it is actually received on or before **4:00 p.m. prevailing Eastern Time on _____, 2017**, by (i) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn.: Christopher A. Ward (cward@polsinelli.com), (ii) counsel to the Agent, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067, Attn: Gregory A. Bray (gbray@milbank.com) and Haig M. Maghakian (hmaghakian@milbank.com), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com), (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov), and (iv) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.  Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's Assigned Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtor's ability to assign the Assigned Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Transferred Assets to the Successful Bidder (the "***Sale Hearing***") before the Honorable [_____], U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom [__], on [_____, 2017 at [_____] a.m./p.m. (prevailing Eastern Time), or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing.  Objections to the sale of the Transferred Assets to the Successful Bidder must be filed and served so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on [_____, 2017] by (i) counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn.: Christopher A. Ward (cward@polsinelli.com), (ii) counsel to the Agent, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067, Attn: Gregory A. Bray (gbray@milbank.com) and Haig M. Maghakian (hmaghakian@milbank.com), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com), (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov), and (v) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety. A copy of the Bidding Procedures and Sale Motion, the Bidding Procedures and the Bidding Procedures Order may be obtained (i) by contacting counsel for the Debtor, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com), or (ii) for a fee via PACER at http://www.deb.uscourts.gov.

Dated:  Wilmington, Delaware
      [_____], 2017

| | |
|---|---|
| LOCKE LORD LLP | POLSINELLI PC |
| David W. Wirt | Christopher A. Ward (Del. Bar No. 3877) |
| Aaron C. Smith | Justin K. Edelson (Del. Bar No. 5002) |
| 111 S. Wacker Drive | 222 Delaware Avenue, Suite 1101 |
| Chicago, Illinois  60606-4410 | Wilmington, Delaware  19801 |
| Telephone: (312) 443-0700 | Telephone: (302) 252-0920 |
| Fax: (312) 443-0336 | Fax: (302) 252-0921 |
| | |
| COUNSEL FOR THE DEBTOR | COUNSEL FOR THE DEBTOR |

**Exhibit 3 to Bidding Procedures Order**

**Cure and Possible Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CALIFORNIA PROTON TREATMENT CENTER, LLC,[1]<br><br>      Debtor. | Chapter 11<br><br>Case No. 17-10477-LSS<br><br>Hon. Laurie Selber Silverstein<br><br>**Re: Docket No. _____** |

### NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND POSSIBLE ASSIGNMENT TO SUCCESSFUL BIDDER AT AUCTION

      **PLEASE TAKE NOTICE** that on _____, 2017, the above-captioned debtors and debtors in possession (the "***Debtor***") filed a motion (the "***Bidding Procedures and Sale Motion***") with the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

      **PLEASE TAKE FURTHER NOTICE** that on _____, 2017, the Bankruptcy Court entered an order [Docket No. _____ ] (the "***Bidding Procedures Order***") approving Bidding Procedures (the "***Bidding Procedures***"), which set key dates, times and procedures related to the sale of substantially of the Debtor's assets (the "***Acquired Assets***"). To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

      **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED BELOW WITH ONE OR MORE OF THE DEBTORS:[2]**

| [Counterparty Name] | [Contract/Lease] | Cure Amount |
|---|---|---|
| | | |

      <u>**Pursuant to the Bidding Procedures, the Debtor may assume the executory contract(s) or unexpired lease(s) listed above to which you are a counterparty (the "*Contracts*"). Also pursuant to the Bidding Procedures, the Debtor may assign the Contract(s) to the successful bidder (the "*Successful Bidder*") at an auction of substantially all of the Debtor's assets currently scheduled for _____, 2017.**</u> The Debtor has

---

[1]    The last four digits of the Debtor's federal tax identification number are: 9073. The location of the Debtor's place of business is 9730 Summers Ridge Road, San Diego, California 92121, Attn: Wilson Williams, Manager.

[2]    This Notice is being sent to counterparties to Contracts. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

conducted a review of its books and records and have determined that the cure amount for unpaid monetary obligations under such contract or lease is $**[AMOUNT]** (the "*Cure Amount*").

**PLEASE TAKE FURTHER NOTICE** that no later than _____, 2017, the Debtor shall file with the Court and serve, via overnight mail, on parties to a Contracts to be assumed and assigned a further notice (the "*Assumption Notice*") identifying (a) all Qualified Bidders, each of whom will be permitted to participate in the Auction, and (b) with respect to each such Qualified Bidder, each of the Contracts that each such Qualified Bidder proposes to assume, and providing such parties with the Qualified Bidders' assurance of future performance. You may request that the Assumption Notice be served on you via email or facsimile by making such request to the Debtor's counsel, Locke Lord LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt (dwirt@lockelord.com) and Aaron C. Smith (asmith@lockelord.com), on or before June 13, 2017 at 4:00 p.m. (prevailing Eastern Time).  Any Contract that a Qualified Bidder elects to assume subsequent to service of the Assumption Notice will be handled under a different procedure and will not be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you (a) object to the proposed assumption or disagree with the proposed Cure Amount, or (b) object to the possible assignment of such Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than _____ 2017, (the "*Objection Deadline*")** and serve such objection on the following parties:

| | |
|---|---|
| LOCKE LORD LLP | POLSINELLI PC |
| | |
| David W. Wirt | Christopher A. Ward (Del. Bar No. 3877) |
| Aaron C. Smith | Justin K. Edelson (Del. Bar No. 5002) |
| 111 S. Wacker Drive | 222 Delaware Avenue, Suite 1101 |
| Chicago, Illinois  60606-4410 | Wilmington, Delaware  19801 |
| Telephone: (312) 443-0700 | Telephone: (302) 252-0920 |
| Fax: (312) 443-0336 | Fax: (302) 252-0921 |
| *Co-Counsel to the Debtor* | |

| | |
|---|---|
| MILBANK, TWEED, HADLEY & MCCLOY LLP | RICHARDS, LAYTON & FINGER, P.A. |
| | |
| Gregory A. Bray | Mark D. Collins |
| Haig M. Maghakian | 920 North King Street |
| 2029 Century Park East, 33rd Floor | Wilmington, Delaware 19801 |
| Los Angeles, California 90067 | Telephone: (302) 651-7700 |
| Telephone: (424) 386-4000 | Facsimile: (302) 651-7701 |
| Facsimile: (213) 629-5063 | |
| *Co-Counsel to the Agent* | |

| | |
|---|---|
| CLERK OF THE BANKRUPTCY COURT | OFFICE OF THE UNITED STATES |
| United States Bankruptcy Court for the District | TRUSTEE FOR THE DISTRICT OF |
| of Delaware | DELAWARE |
| 824 North Market Street, 3rd Floor | J. Caleb Boggs Federal Building |

| Wilmington, DE 19801 | 844 King Street, Suite 2008 – Lockbox #35<br>Wilmington, DE  19801 |

If no objection to the Cure Amount or the assignment of your Contract(s) to the Successful Bidder is filed by the Objection Deadline, **you will be deemed to have stipulated that the Cure Amount as determined by the Debtor and set forth above is correct and you shall be forever barred, estopped and enjoined from (a) asserting any additional cure amount under the above-listed Contract(s) or (b) objecting to the assumption and assignment of the above-listed Executory Contract(s) and Unexpired Lease(s) to the Successful Bidder**; *provided* **that the foregoing does not apply to amounts the come due under the Contract after the Objection Deadline.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available: (a) upon request from the proposed counsel to the Debtor, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David W. Wirt and Aaron C. Smith; and (b) for a fee via PACER by visiting http://www.deb.uscourts.gov.

Dated:  Wilmington, Delaware
        [_____], 2017

LOCKE LORD LLP
David W. Wirt
Aaron C. Smith
111 S. Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336

COUNSEL FOR THE DEBTOR

POLSINELLI PC
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

COUNSEL FOR THE DEBTOR

**Exhibit 4 to Bidding Procedures Order**

**Assumption Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CALIFORNIA PROTON TREATMENT<br>CENTER, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 17-10477-LSS<br><br>Hon. Laurie Selber Silverstein<br><br>**Re: Docket No. \_\_\_\_** |

## NOTICE OF PROPOSED ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on _____ \_\_\_, 2017, the above-captioned debtor as debtor in possession (the "***Debtor***") filed for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"), and also filed a motion (the "***Sale Motion***")[2] to sell substantially all of its assets (the "***Assets***") free and clear of all liens, claims, encumbrances, and other interests (the "***Sale***") and assume and assign certain of its executory contracts and unexpired leases (collectively, the "***Contracts***") to the purchaser of the Assets.[3]

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of the Assets of the Debtor consistent with the bidding procedures (the "***Bidding Procedures***") approved by the Court by the entry of an order on _____ \_\_\_, 2017 (the "***Bidding Procedures Order***").[4]   The Bidding Procedures include, among other things, procedures for the assumption and assignment of the Contracts (the "***Assumption Procedures***").

---

[1]   The last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business is 9730 Summers Ridge Road, San Diego, California 92121, Attn: Wilson Williams, Manager.

[2]   *Motion of the Debtor for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor' Assets, (B) Approving the Form and Manner of Notice thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Successful Bidder, and (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* [Docket No. \_\_\_]

[3]   Capitalized terms used as defined terms but not defined herein shall have all the meanings ascribed to them in the Sale Motion.

[4]   *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granted Related Relief* [Docket No. \_\_\_].

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Assumption Procedures, and by this written notice, the Debtor hereby notifies you that the parties identified on the attached **Schedule 1** (each a "*Qualified Bidder*") have identified one or more of the Contracts and any modifications thereto set forth on **Schedule 1** attached hereto (collectively, the "*Assigned Contracts*") as contracts that shall be assumed and assigned to them if they are the Successful Bidder, subject to the Successful Bidder's payment of the cure amount set forth on **Schedule 1**, or such other cure amounts as are agreed by the parties.

**PLEASE TAKE FURTHER NOTICE** that included with this notice is each Qualified Bidder's proposed assurance of its future performance under the Assigned Contracts if designated the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder has the right under certain circumstances to designate additional Contracts as Assigned Contracts or remove certain Contracts from the list of Assigned Contracts prior to closing. Any Contract that a Qualified Bidder elects to assume subsequent to service of this notice will be handled under a different procedure and will not be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you (a) object to the proposed assumption or disagree with the proposed Cure Amount, or (b) object to the possible assignment of such Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than _____ 2017**, (the "*Objection Deadline*") and serve such objection on the following parties:

| LOCKE LORD LLP | POLSINELLI PC |
|---|---|
| David W. Wirt | Christopher A. Ward (Del. Bar No. 3877) |
| Aaron C. Smith | Justin K. Edelson (Del. Bar No. 5002) |
| 111 S. Wacker Drive | 222 Delaware Avenue, Suite 1101 |
| Chicago, Illinois  60606-4410 | Wilmington, Delaware  19801 |
| Telephone: (312) 443-0700 | Telephone: (302) 252-0920 |
| Fax: (312) 443-0336 | Fax: (302) 252-0921 |
| | |
| *Co-Counsel to the Debtor* | |

| MILBANK, TWEED, HADLEY & MCCLOY LLP | RICHARDS, LAYTON & FINGER, P.A. |
|---|---|
| Gregory A. Bray | Mark D. Collins |
| Haig M. Maghakian | 920 North King Street |
| 2029 Century Park East, 33rd Floor | Wilmington, Delaware 19801 |
| Los Angeles, California 90067 | Telephone: (302) 651-7700 |
| Telephone: (424) 386-4000 | Facsimile: (302) 651-7701 |
| Facsimile: (213) 629-5063 | |
| | |
| *Co-Counsel to the Agent* | |

| CLERK OF THE BANKRUPTCY COURT | OFFICE OF THE UNITED STATES |
|---|---|
| United States Bankruptcy Court for the District | TRUSTEE FOR THE DISTRICT OF |

| of Delaware<br>824 North Market Street, 3rd Floor<br>Wilmington, DE 19801 | DELAWARE<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2008 – Lockbox #35<br>Wilmington, DE  19801 |
|---|---|

If no objection to the Cure Amount or the assignment of your Contract(s) to the Successful Bidder is filed by the Objection Deadline, **you will be deemed to have stipulated that the Cure Amount as determined by the Debtor and set forth above is correct and you shall be forever barred, estopped and enjoined from (a) asserting any additional cure amount under the above-listed Contract(s) or (b) objecting to the assumption and assignment of the above-listed Executory Contract(s) and Unexpired Lease(s) to the Successful Bidder**; *provided* that the foregoing does not apply to amounts the come due under the Contract after the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available: (a) upon request from the proposed counsel to the Debtor, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David W. Wirt and Aaron C. Smith; and (b) for a fee via PACER by visiting http://www.deb.uscourts.gov.

Dated:  Wilmington, Delaware
          [_____], 2017

LOCKE LORD LLP
David W. Wirt
Aaron C. Smith
111 S. Wacker Drive
Chicago, Illinois  60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336

COUNSEL FOR THE DEBTOR

POLSINELLI PC
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

COUNSEL FOR THE DEBTOR

## Schedule 1 to Assumption Notice

### Assigned Contracts[1]

| Counterparty | Description of Assigned Contracts or Leases | Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

---

[1]    The presence of a contract or lease on this **Schedule 1** does not constitute and admission by the Debtor that such contract is an executory contract or such lease in an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease assumed and assigned pursuant to an order of the Court.